## STATE OF CONNECTICUT *v.* RALSTON SALMON
## (SC 15930)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.[1]

---

[1] This case first was argued on March 25, 1999, before a panel of this court consisting of Chief Justice Callahan, and Justices Borden, Berdon, Katz and Palmer. Thereafter, the court decided, sua sponte, to consider the case en banc and Justices Norcott and McDonald were added to the panel. In addition, the parties were ordered to submit supplemental briefs regarding certain issues. See footnote 7 of this opinion.

Argued April 27—officially released August 10, 1999

*Matthew P. Tuller*, for the appellant (B & B Bail Bonds Agency, Inc.).

*Carolyn K. Longstreth*, assistant state's attorney, with whom were *David Kutzner*, assistant state's attorney, and, on the brief, *Michael Dearington*, state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The principal issue in this certified appeal is whether a bail bondsman, who is a nonparty to the underlying criminal action, may appeal pursuant

to General Statutes § 52-263,[2] from the trial court's order to forfeit its bond. We conclude that, as a nonparty, a bail bondsman does not have a right of appeal under § 52-263.

The record discloses the following factual and procedural history. The defendant in the underlying criminal case, Ralston Salmon, was arrested and charged with violating General Statutes §§ 21a-279 (a) and (c),[3] and 21a-277 (a).[4] He posted a surety bond of $150,000 and

[2] General Statutes § 52-263 provides: "Appeals from Superior Court. Exceptions. Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9."

[3] General Statutes § 21a-279 provides in relevant part: "Penalty for illegal possession. Alternative sentences. "(a) Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned. . . .

"(c) Any person who possesses or has under his control any quantity of any controlled substance other than a narcotic substance, or a hallucinogenic substance other than marijuana or who possesses or has under his control less than four ounces of a cannabis-type substance, except as authorized in this chapter, for a first offense, may be fined not more than one thousand dollars or be imprisoned not more than one year, or be both fined and imprisoned; and for a subsequent offense, may be fined not more than three thousand dollars or be imprisoned not more than five years, or be both fined and imprisoned. . . ."

[4] General Statutes § 21a-277 provides in relevant part: "Penalty for illegal manufacture, distribution, sale, prescription, dispensing. "(a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled

was released. B & B Bail Bonds Agency, Inc. (bonds-man), was the surety that furnished the bond. When the defendant later failed to appear for a court date, the trial court, on January 7, 1997, ordered the forfeiture of the bond. The court, pursuant to General Statutes § 54-65a,[5] simultaneously ordered the rearrest of the defendant and a stay of execution on the forfeiture for six months. The bondsman located the defendant in Jamaica, but was not permitted to remove him without

substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned. . . ."

[5] General Statutes § 54-65a provides: "Forfeiture of bond for failure to appear. Issuance of rearrest warrant or capias. Termination or reinstatement of bond. Rebate to surety. (a) Whenever an arrested person is released upon his execution of a bond with surety in an amount of five hundred dollars or more and such bond is ordered forfeited because the principal failed to appear in court as conditioned in such bond, the court shall, at the time of ordering the bond forfeited: (1) Issue a rearrest warrant or a capias directing a proper officer to take the defendant into custody and (2) order a stay of execution upon the forfeiture for six months. When the principal whose bond has been forfeited is returned to custody pursuant to the rearrest warrant or a capias within six months of the date such bond was ordered forfeited, the bond shall be automatically terminated and the surety released and the court shall order new conditions of release for the defendant in accordance with section 54-64a. When the principal whose bond has been forfeited returns to court voluntarily within five business days of the date such bond was ordered forfeited, the court may, in its discretion, and after finding that the defendant's failure to appear was not wilful, vacate the forfeiture order and reinstate the bond. Such stay of execution shall not prevent the issuance of a rearrest warrant or a capias.

"(b) Whenever an arrested person, whose bond has been forfeited, is returned to the jurisdiction of the court within one year of the date such bond was ordered forfeited, the surety on such bond shall be entitled to a rebate of that portion of the forfeited amount as may be fixed by the court or as may be established by a schedule adopted by rule of the judges of the court."

extradition authorization from Connecticut. Accordingly, the bondsman requested that the state's attorney's office extradite the defendant to Connecticut, which it refused to do. The stay of execution subsequently lapsed, and the forfeiture of the bond became due. After the state settled its claim with the bondsman for $75,000, the bondsman moved in the trial court for both a rebate of the bond forfeiture and a release from the bond. The trial court denied these motions, and the bondsman appealed from the denial of the motion for release to the Appellate Court.

The Appellate Court, acting sua sponte, placed the matter on its calendar on the question of "why the appeal should not be dismissed because review by way of an appeal is not available to a nonparty." After hearing argument on that question, the Appellate Court dismissed the appeal. We granted the bondsman's petition for certification on this issue.[6] Following oral argument, we decided, sua sponte, to consider the case en banc; see footnote 1 of this opinion; and to request supplemental briefs by the parties.[7]

[6] The specific question certified in this appeal is: "Did the Appellate Court properly conclude that the appellant bail bond company, as a nonparty to this criminal action, had no right to appeal from the judgment of the trial court denying its motions for release of bond and for rebate on its bond?" *State* v. *Salmon*, 244 Conn. 936, 717 A.2d 233 (1998).

[7] The order for supplemental briefs provided the following questions to be addressed by the parties: "1. In deciding whether a bail bondsman, who is a nonparty to the underlying criminal action, may properly appeal, pursuant to § 52-263, the decision of the trial court forfeiting its surety bond, should this court adopt the following bright-line test requiring the appellant to establish in the following sequence that: (1) it was a party to the underlying action; (2) it was aggrieved by the trial court decision; and (3) the appeal is from a final judgment?

"2. Whether the adoption of such a test would require the court to overrule such decisions as *Presidential Capital Corp.* v. *Reale*, 240 Conn. 623, 692 A.2d 794 (1997), *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 685 A.2d 1108 (1996), *Lougee* v. *Grinnell*, 216 Conn. 483, 582 A.2d 456 (1990), and *In re Mongillo*, 190 Conn. 686, 461 A.2d 1387 (1983)?

"3. Whether the adoption of such a test should be prospective only in its application?"

Before this court, the bondsman claims that the Appellate Court's interpretation of § 52-263 was incorrect. Specifically, the bondsman claims that review by way of appeal pursuant to § 52-263 is available based on our construction in prior cases of the term "party" contained in § 52-263. We disagree, and conclude that review by way of appeal pursuant to § 52-263 is available only to parties to an underlying action.

## I

We first must determine the parameters of the "party" requirement of § 52-263. Such a determination is a matter of statutory construction and, therefore, a matter of law over which this court's review is plenary. *Wright Bros. Builders, Inc.* v. *Dowling*, 247 Conn. 218, 226, 720 A.2d 235 (1998). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431, 692 A.2d 742 (1997).

We begin our analysis by examining the plain language of § 52-263, which provides in relevant part: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, *if either party* is aggrieved by the decision of the court or judge

upon any question or questions of law arising in the trial . . . he may appeal to the court having jurisdiction from the final judgment of the court or of such judge . . . ." (Emphasis added.) On its face, the statute explicitly sets out three criteria that must be met in order to establish subject matter jurisdiction for appellate review: (1) the appellant must be a party; (2) the appellant must be aggrieved by the trial court's decision; and (3) the appeal must be taken from a final judgment.

The relevant language concerning "either party" has remained unchanged since the statute was first enacted in 1929 as Public Acts 1929, c. 301, § 1.[8] Because records of legislative history are not available for that time, the legislature's intent in using the phrase "either party" is unknown. We previously have interpreted the party requirement of § 52-263, however, to mean a party to the underlying action. In *Bergeron* v. *Mackler*, 225 Conn. 391, 392, 623 A.2d 489 (1993), the plaintiffs in error brought a writ of error concerning the disqualification of the law firm that they had retained to represent them as nonparty witnesses in a marital dissolution. In addressing the claims made pursuant to the writ of error, this court noted in a footnote that "[t]he claim sought to be reviewed by the plaintiffs in error *could*

---

[8] Public Acts 1929, c. 301, § 1, provides: "Appeals to the supreme court of errors. Upon the trial of all matters of fact in any cause or action, except summary process, in the superior court, any court of common pleas or any city court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is or shall be vested in him, if either party shall consider himself aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, he may appeal from the final judgment of the court or of such judge and remove such question or questions for revision to the supreme court of errors next to be held after the filing of the appeal, in the judicial district where such judgment was rendered; provided any appeal authorized by this section from the judgment of the superior court at Waterbury, or the court of common pleas for the judicial district of Waterbury, may be taken to the supreme court of errors sitting in the third or in the first judicial district, at the election of the appellant."

*not have been reviewed by this court by way of appeal because they were not parties in the underlying marital dissolution action.* Only an aggrieved *party* may appeal from a final judgment of the trial court. See Practice Book [§ 61-1, formerly § 4000]. Consequently, a writ of error is the proper vehicle for review of the plaintiffs' claim." (Emphasis added.) *Bergeron* v. *Mackler*, supra, 391–92 n.1.

Our prior interpretation in *Bergeron* is consistent with the usual meaning of the term "party." "Ordinarily, the word 'party' has a technical legal meaning, referring 'to those by or against whom a legal suit is brought . . . the party plaintiff or defendant, whether composed of one or more individuals and whether natural or legal persons.' Black's Law Dictionary, citing *Golatte* v. *Mathews*, 394 F. Sup. 1203, 1207 (D.C. Ala. 1975) . . . ." (Citation omitted.) *Lieberman* v. *Reliable Refuse Co.*, 212 Conn. 661, 669, 563 A.2d 1013 (1989). This definition of party, which we also have labeled "party status in court"; *Rose* v. *Freedom of Information Commission*, 221 Conn. 217, 225–26, 602 A.2d 1019 (1992); includes only those who are parties to the underlying action.

The bondsman argues, however, that judicially created exceptions exist whereby an appellant need not establish that he was a party to the underlying action in order to establish subject matter jurisdiction pursuant to § 52-263. As support for this contention, the bondsman, first, relies upon our interpretation of "party" in *Day* v. *Middletown*, 245 Conn. 437, 441–42, 716 A.2d 47 (1998), and second, argues that interpreting the party requirement of § 52-263 as limited to parties to the underlying action would conflict in varying degrees with our prior decisions in *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 685 A.2d 1108 (1996), *Lougee* v. *Grinnell*, 216 Conn. 483, 582 A.2d 456 (1990),

and *In re Mongillo*, 190 Conn. 686, 461 A.2d 1387 (1983).[9]
We are unpersuaded. To the extent that those prece-
dents imply that a person or legal entity that is not a
party to the underlying action constitutes a party for
purposes of appellate review pursuant to § 52-263, those
precedents are mistaken and are hereby overruled.

The bondsman first contends that, in *Day* v. *Middle-
town*, supra, 245 Conn. 442, we created a standard by
which de facto parties satisfy the "party" requirement
for appellate review. We disagree that our decision in
*Day* requires us to establish a broader definition of
"party" for purposes of § 52-263 than we adopt today.
In *Day*, we interpreted the term "party" in the context

---

[9] In our request for supplemental briefs, we posed the question of whether
defining "party" to mean "party to the underlying action" would require us
to overrule our previous decisions in *Presidential Capital Corp.* v. *Reale*,
240 Conn. 623, 692 A.2d 794 (1997), *CFM of Connecticut, Inc.* v. *Chowdhury*,
supra, 239 Conn. 375, *Lougee* v. *Grinnell*, supra, 216 Conn. 483, and *In re
Mongillo*, supra, 190 Conn. 686. The bondsman does not contend that the
definition of "party" that we adopt today would necessarily conflict with
our decision in *Presidential Capital Corp.* Nevertheless, we address that
case briefly here for purposes of clarification.

In *Presidential Capital Corp.* v. *Reale*, supra, 240 Conn. 626, the appel-
lants, the wife and son of the defendant in the underlying action, filed an
appeal from the trial court's denial of their motions for protective orders.
The Appellate Court dismissed the appeal on the ground that the trial court
had not rendered a final judgment, and we granted certification limited to
the following issue: "If, in postjudgment proceedings, a postjudgment credi-
tor seeks to examine nonparties to discover undisclosed assets of its judg-
ment debtor, must an appeal by the nonparties from a trial court order
denying their motions for protective orders be dismissed for lack of a final
judgment?" *Presidential Capital Corp.* v. *Reale*, supra, 627 n.2. We affirmed
the judgment of the Appellate Court, concluding that under *State* v. *Curcio*,
191 Conn. 27, 30, 463 A.2d 566 (1983), the trial court's decision did not
terminate a separate and distinct proceeding and, therefore, was not a final
judgment. *Presidential Capital Corp.* v. *Reale*, supra, 633. In affirming the
Appellate Court's determination that the lack of final judgment precluded the
establishment of subject matter jurisdiction for review pursuant to General
Statutes § 52-351b, we did not reach the question of whether the appellants
would have been considered parties under § 52-263. Accordingly, the bonds-
man is correct in noting that the case has no bearing on our analysis here.

of General Statutes § 31-301b of the Workers' Compensation Act. Section 31-301b provides in relevant part: "*Any party* aggrieved by the decision of the Compensation Review Board upon any question or questions of law arising in the proceedings may appeal the decision . . . to the Appellate Court." (Emphasis added.) In that case, an employee retained the services of a law firm in the prosecution of a workers' compensation claim and agreed to pay the law firm 20 percent of the employee's gross recovery. Shortly before resolution of the matter two years later, the employee discharged that law firm and retained a different attorney. In a fee approval hearing, the workers' compensation commissioner awarded compensation to the law firm, and that sum was reduced on appeal to the workers' compensation review board. *Day* v. *Middletown*, supra, 438–39. This court concluded that the law firm was an aggrieved, de facto party under § 31-301b, because, for purposes of that statute, "[i]n short, a party is a litigant with a personal stake in the outcome of the controversy." (Internal quotation marks omitted.) Id., 440.

Our adoption of a broader construction of the term "party" that includes de facto parties in the context of appeals from the workers' compensation review board pursuant to § 31-301b does not, however, compel a similar construction of the term "party" in the context of § 52-263. The circumstances surrounding our decision in *Day* are distinguishable from the present case in three critical respects. First, the plain language of the two statutes differ; whereas § 31-301b permits an appeal to be brought by "*any* party," § 52-263 explicitly provides that "*either* party" may seek appellate review if aggrieved. According to Black's Law Dictionary (6th Ed. 1990), although the word "any" can be considered synonymous with "either," "every" or "all," it generally is understood to mean "one out of many; an indefinite number." In contrast, "either" is defined as "each of

two; or the other of two alternatives." Id. The use of the word "either" in the context of § 52-263, therefore, implies a narrower universe of possible appellants than where the term "any" is used; "either party" being limited to those persons or entities that are on one of two sides of a matter before the court, that is, the side of the plaintiff or of the defendant.

Second, *Day* involved an appeal from the decision of an administrative agency, whereas § 52-263 concerns the appellate review of decisions of the trial court. We previously have concluded that in addition to its ordinary technical legal meaning, the term "party" may have a broader, commonly approved usage signifying "[a] person concerned or having or taking part in any affair, matter, transaction, or proceeding, considered individually, and . . . is not restricted to strict meaning of plaintiff or defendant in a lawsuit." (Internal quotation marks omitted.) *Rose* v. *Freedom of Information Commission*, supra, 221 Conn. 227. Accordingly, where appropriate in the context of appeals from the decisions of administrative agencies, we have construed the term "party" more broadly than its ordinary, technical legal meaning.[10] Our prior, broader interpretation of a workers' compensation statute has no bearing, however, on

---

[10] For example, in *Rose* v. *Freedom of Information Commission*, supra, 221 Conn. 225–26, this court was required to interpret the meaning of the term "party" in the context of General Statutes § 1-21i (d), which provides in relevant part: "*Any party* aggrieved by the decision of [the freedom of information commission] may appeal therefrom, in accordance with the provisions of section 4-183." (Emphasis added.) In *Rose*, we concluded that party status for purposes of § 1-21i (d) should not be limited to parties to the underlying action, based in part on the legislative history, which indicated that the word "party" had been included in the statute as a replacement for the word "person," to insure that any aggrieved legal entity, along with any aggrieved natural person, could obtain access to judicial review under the statute. *Rose* v. *Freedom of Information Commission*, supra, 229. When understood as a substitute for the statement that "any aggrieved person" may appeal a decision of the freedom of information commission, the necessity in *Rose* for the broader reading of the term "party" in relation to § 1-21i (d) is apparent.

our construction of § 52-263. We are also mindful that the purpose of the Workers' Compensation Act is remedial. *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 447, 705 A.2d 1012 (1997). In light of that remedial purpose, a broader construction of provisions pertaining to the workers' compensation commission is appropriate, whereas a similar reading would not be appropriate in the context of appellate jurisdiction to review decisions of the trial court.

Third, and perhaps most significantly, a writ of error was not available to the aggrieved law firm in *Day*, whereas a person in the shoes of the bondsman in the present case would have a right of review by way of a writ of error. A writ of error may be brought to this court pursuant to General Statutes § 52-272 et seq., and Practice Book § 72-1. As we noted in *Day* v. *Middletown*, supra, 245 Conn. 442, "a writ of error only may be brought from a final judgment of the superior court . . . ." See also Practice Book § 72-1 (a). As a result, although a writ of error categorically is not available to an appellant such as the de facto party in *Day*, who would be seeking review of a decision of the workers' compensation review board, it certainly is available to address a perceived error concerning the denial of a bail bondsman's motion for rebate or release in the context of a criminal trial in the Superior Court. For all of these reasons, we disagree with the bondsman that our decision in *Day* should govern our analysis of § 52-263.

We next address the bondsman's claim that *CFM of Connecticut, Inc.* v. *Chowdhury*, supra, 239 Conn. 375, provides authority for the contention that a nonparty to the underlying action has a right of appellate review pursuant to § 52-263. At issue in *Chowdhury* was whether a sanctions order addressed to the plaintiff's attorney constituted a final judgment for purposes of res judicata such that a subsequent judge would be

precluded from vacating the order. Id., 376. In that case, both the plaintiff and its attorney appealed[11] to the Appellate Court pursuant to § 52-263, and the defendant cross appealed the vacating of the order. Concluding that the sanction order was a final judgment, the Appellate Court decided in the defendant's favor, reversing the portion of the judgment that had vacated the sanction. Id., 377. The plaintiff's attorney, who was the cross appellee before the Appellate Court on the defendant's claim concerning the sanction order, then requested certification by this court pursuant to General Statutes § 51-197f,[12] which we granted. *CFM of Connecticut, Inc.* v. *Chowdhury*, 235 Conn. 933, 667 A.2d 1270 (1995). We subsequently affirmed the judgment of the Appellate Court. *CFM of Connecticut* v. *Chowdhury*, supra, 239 Conn. 404.

The bondsman argues that we must overrule *Chowdhury* under the construction of the term "party" that we adopt today. This argument is flawed because the defendant in the underlying action in *Chowdhury* properly had brought the cross appeal pursuant to § 52-263 before the Appellate Court, and, as a result, the plaintiff's attorney was properly before that court as the cross appellee. We entertained the appeal in that

[11] Although both the plaintiff and its attorney appealed, we determined that only the propriety of vacating the sanction order as it applied to the attorney, and not the attorney's client, was properly before this court. *CFM of Connecticut, Inc.* v. *Chowdhury*, supra, 239 Conn. 387.

[12] General Statutes § 51-197f provides: "Further review by certification only. Upon final determination of any appeal by the Appellate Court, there shall be no right to further review except the Supreme Court shall have the power to certify cases for its review upon petition by an aggrieved party or by the appellate panel which heard the matter and upon the vote of three justices of the Supreme Court so to certify and under such other rules as the justices of the Supreme Court shall establish. The procedure on appeal from the Appellate Court to the Supreme Court shall, except as otherwise provided, be in accordance with the procedure provided by rule or law for the appeal of judgments rendered by the Superior Court, unless modified by rule of the justices of the Supreme Court."

case pursuant to § 51-197f, and thus, did not consider the plaintiff's attorney to be a party pursuant to § 52-263, but instead, pursuant to § 51-197f. Accordingly, *Chowdhury* does not stand for the proposition that the plaintiff's attorney, as a nonparty to the underlying action, properly could obtain a right of review pursuant to § 52-263.[13] As a result, our decision in *Chowdhury* does not conflict with the analysis of § 52-263 set forth in this opinion. In any event, moreover, to the extent that *Chowdhury* may be read to expand the meaning of the term "party" as used in § 52-263, we disavow any such reading.

We next address together, *Lougee* v. *Grinnell*, supra, 216 Conn. 483, and *In re Mongillo*, supra, 190 Conn. 686, which the bondsman also asserts are at odds with our interpretation of the term "party." We begin our analysis by reviewing the relevant procedural history of each case. In *Lougee* v. *Grinnell*, supra, 484, the appellee was the plaintiff in a Texas action who sought the testimony of the Connecticut appellant, a former employee of the defendant in the Texas action. Because the appellant could not be compelled to testify in Texas on behalf of his former employer, the appellee sought to subpoena the appellant to appear at a deposition in Connecticut. The appellant moved in the Superior Court of this state to quash the subpoena, which motion was denied. The appellant then appealed to the Appellate Court, and we transferred the appeal to this court. Id., 485–86. Before reaching the merits of the appeal, we set out to determine whether the appeal was properly before this court as an appealable final judgment, noting

---

[13] We note that determining the proper interpretation of the term "party" for purposes of § 51-197f is not necessary to the resolution of the present case, and we decline to do so here. We simply assume, without deciding, that once the defendant's cross appeal was entertained by the Appellate Court in *Chowdhury*, the plaintiff's attorney, as a party to that appellate action, was properly a party for purposes of § 51-197f when we granted certification and entertained the claim of the plaintiff's attorney.

that an order issued upon a discovery motion in a civil case ordinarily does not constitute an appealable final judgment. Id., 486. We stated that "the sole judicial proceeding instituted in Connecticut concerned the propriety of [the appellee's] deposition subpoena, a proceeding that will not result in a later judgment from which [the appellant] can then appeal. Thus, this appeal falls within the first prong of the test of finality of judgment stated in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983): (1) where the order or action terminates a separate and distinct proceeding." (Internal quotation marks omitted.) *Lougee* v. *Grinnell*, supra, 487. Having so concluded, we went on to address the merits of the appeal.

The appeal in *In re Mongillo*, supra, 190 Conn. 687–88, was brought by an attorney who the trial court had fined for tardiness, after untimely arriving for the call of the court docket. The attorney represented two defendants whose cases were called prior to his arrival. The attorney appealed the imposition of the fine to the Appellate Session of the Superior Court, which transferred the matter to this court. Id., 489–90. We addressed the merits of the claim without discussing the subject matter jurisdiction of the court to entertain the appeal, concluding that the imposition of the fine constituted an abuse of discretion. Id., 693.

The bondsman contends that these cases compel the conclusion that a nonparty to the underlying action has a right of review pursuant to § 52-263. We disagree. The question of party status pursuant to § 52-263 was never explicitly addressed in either *Lougee* or *In re Mongillo*. "It is the general rule that a case resolves only those issues explicitly decided in the case. See *Connecticut Light & Power Co.* v. *Costle*, 179 Conn. 415, 416 n.1, 426 A.2d 1324 (1980); *State* v. *DellaCamera*, 166 Conn. 557, 561, 353 A.2d 750 (1974); *State* v. *Darwin*, 161 Conn. 413, 421–22, 288 A.2d 422 (1971)." *State* v. *Ouellette*, 190

Conn. 84, 91, 459 A.2d 1005 (1983). "Under the accepted rule, the doctrine of stare decisis contemplates only such points as are actually involved and determined in a case, and not what is said by the court on points not necessarily involved therein." *Riley* v. *Board of Police Commissioners*, 145 Conn. 1, 5, 137 A.2d 759 (1958). For example, "[i]n *DellaCamera* . . . this court declared a state statute unconstitutional after it had noted that previous cases had construed and applied the statute. The *DellaCamera* court stressed that no constitutional attack had been raised in the earlier cases and that therefore the earlier decisions could not stand for the proposition that the statute was constitutional. *State* v. *DellaCamera*, supra, [166 Conn.] 560–61." *Connecticut Light & Power Co.* v. *Costle*, supra, 179 Conn. 416–17 n.1.

These principles apply to both *Lougee* and *In re Mongillo*, in neither of which did we explicitly address the question of party status prior to addressing the merits of the appeal. Both of these cases were decided before we stated explicitly in *Bergeron* v. *Mackler*, supra, 225 Conn. 391–92 n.1, that someone not a party to the underlying action had no right of review pursuant to § 52-263. As a result, they should not be understood to support the proposition that a nonparty to the underlying action is a party for purposes of § 52-263. Thus, properly understood, these cases do not prevent us from concluding that the term "party" is limited to parties to the underlying action for purposes of establishing a right to review pursuant to § 52-263, as we do today.

II

With the definition of the term "party" established for purposes of § 52-263, we return to the first question posed in our request for supplemental briefs, that is, whether we should adopt a bright-line test requiring the appellant, in order to establish a right of appellate review pursuant to § 52-263, to establish in the following

sequence that: (1) it was a party to the underlying action; (2) it was aggrieved by the trial court decision; and (3) the appeal is from a final judgment.[14] We today expressly adopt this bright-line test. We state this primarily for purposes of clarification, because we previously have considered each one of the three criteria to be an independent threshold requirement to be satisfied in order to establish jurisdiction for review by way of appeal pursuant to § 52-263. See, e.g., *Bergeron* v. *Mackler*, supra, 225 Conn. 391–92 n.1 ("[b]ecause they were not parties to the marital dissolution proceedings, [the plaintiffs in error] could not have had the claim reviewed by way of an appeal"); *Milford* v. *Local 1566*, 200 Conn. 91, 96, 510 A.2d 17 (1986) ("requisite element of appealability is that the party claiming error be 'aggrieved' by the decision of the trial court"); *State* v. *Curcio*, supra, 191 Conn. 30 ("threshold question [is] whether the appeal is taken from a final judgment").[15]

[14] See footnote 7 of this opinion for the complete text of the supplemental questions.

[15] Because we resolve the present case by concluding that the bondsman was not a party to the underlying action for purposes of § 52-263, we need not consider the two remaining criteria concerning aggrievement and final judgment. Nevertheless, we note, for purposes of clarification, that the contours of these two remaining criteria are well settled. "The test for determining aggrievement encompasses a . . . twofold determination: first, the party claiming aggrievement must demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest shared by the community as a whole; second, the party claiming aggrievement must establish that this specific personal and legal interest has been specifically and injuriously affected by the decision. . . . Mere status as a party or a participant in the proceedings below 'does not in and of itself constitute aggrievement for the purposes of appellate review.' " (Citations omitted.) *Milford* v. *Local 1566*, supra, 200 Conn. 95. Although a final judgment by the trial court is normally necessary to establish subject matter jurisdiction under § 52-263, "[i]n both criminal and civil cases, however, we have determined certain interlocutory orders and rulings of the Superior Court to be final judgments for purposes of appeal. An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so precludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, supra, 191 Conn. 31.

A bright-line test will aid litigants, who wish to challenge trial court orders through the appellate process, to determine the proper procedural method for such a challenge—an appeal, or a writ of error. The clarity yielded by a bright-line test, moreover, is helpful because the procedural decision ordinarily must be made in a very short time period.

The bondsman contends that we should not adopt this bright-line test, arguing, first, that the present method of analysis is satisfactory, and second, that if it is to be adopted, the question of final judgment should be addressed first among the three requirements. We are not convinced.

The bondsman's argument that the present method of analysis is satisfactory without the adoption of a bright-line test is unpersuasive because it rests on the incorrect assumption that, under the present system, a nonparty to the underlying action should and would have a right to appeal pursuant to § 52-263 in limited circumstances.[16] Because we have established that the proper interpretation of the term "party" for purposes of § 52-263 includes only parties to the underlying action, this argument fails. The bondsman also contends that the final judgment criteria must be addressed first among the three criteria because interlocutory orders are not normally appealable final judgments and, therefore, only when the appealability as a final judgment is established should the court proceed to evaluate the other criteria. This argument also is without merit. Because each criteria must be met independently, there is no reason why the final judgment criteria should not be addressed subsequent to a determination of party

---

[16] Specifically, the bondsman contends that, consistent with *Lougee*, a nonparty may obtain appellate review pursuant to § 52-263 when appealing an interlocutory order that qualifies as a final judgment pursuant to the first prong of the *Curcio* test. See part I of this opinion for a discussion of the application of *Curcio* in *Lougee*.

status and aggrievement. Moreover, as a practical mat-
ter, in applying the bright-line test in a particular case,
if we were to determine that review pursuant to § 52-
263 would not be available because of a failure to satisfy
the final judgment criteria, it would be appropriate for
us simply to assume without deciding that the first two
criteria had been established, and go on to determine
the jurisdictional issue on final judgment grounds. As
a result, the bondsman's argument in this regard is of
no moment.

### III

Lastly, we address the question of whether the adop-
tion of the bright-line test for establishing jurisdiction
should be prospective only in its application.[17] The
bondsman contends that the test should be applied
prospectively because to do otherwise would be unfair
to it and others that are similarly situated. We are unper-
suaded.

"We start our analysis with the observation that [t]he
courts of the states are free to determine the extent to
which new decisions are to have retrospective effect."
(Internal quotation marks omitted.) *Neyland* v. *Board
of Education*, 195 Conn. 174, 179, 487 A.2d 181 (1985).
We previously have reviewed the analytical framework
adopted by the federal courts for determining the pro-
priety of a retroactive or prospective application of a
particular decision. In *Neyland* v. *Board of Education*,
supra, 179, we noted the United States Supreme Court's
construction of a three factor test to determine whether
a particular judicial decision should be applied prospec-
tively, which was established in *Chevron Oil Co.* v.
*Huson*, 404 U.S. 97, 106–107, 92 S. Ct. 349, 30 L. Ed. 2d

---

[17] See footnote 7 of this opinion for the text of the supplemental question
addressing this issue.

296 (1971).[18] We then went on to distinguish this test of general applicability from that court's decision in *Firestone Tire & Rubber Co.* v. *Risjord*, 449 U.S. 368, 101 S. Ct. 669, 66 L. Ed. 2d 571 (1981), noting that "[i]n [*Firestone Tire & Rubber Co.*], the court concluded that [a] court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may never be made prospective only. Id., 379. . . . While the United State's Supreme Court's decision to limit prospectively the holding in *Northern Pipeline Construction Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982), casts some doubt on the rule of automatic retroactivity expressed in [*Firestone Tire & Rubber Co.*], several courts have found the reasoning of [*Firestone Tire & Rubber Co.*] persuasive. See, e.g., *Cuddy* v. *Carmen*, 694 F.2d 853, 859 n.24 (D.C. Cir. 1982); *deMouy* v. *Ingvoldstad*, 664 F.2d 21, 22 (3d Cir. 1981)." (Citations omitted; internal quotation marks omitted.) *Neyland* v. *Board of Education*, supra, 179. We concluded that "[w]hile we need not go so far as to hold that jurisdictional rulings of this court may never be applied nonretroactively, we do hold the [*Chevron Oil Co.*] test inapplicable to jurisdiction issues and find no exceptional circumstances or overriding needs of public policy similar to those present in *Northern Pipeline Construction Co.* v. *Marathon Pipe Line Co.*, supra,

---

[18] The United States Supreme Court has established that there are "three considerations recognized by our precedents as properly bearing upon the issue of retroactivity. They are, first, whether the holding in question decided an issue of first impression whose resolution was not clearly foreshadowed by earlier cases . . . second, whether retrospective operation will further or retard [the] operation of the holding in question . . . and third, whether retroactive application could produce substantial inequitable results in individual cases . . . ." (Citations omitted; internal quotation marks omitted.) *Northern Pipeline Construction Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50, 88, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982), citing *Chevron Oil Co.* v. *Huson*, supra, 404 U.S. 106–107.

[458 U.S. 50], to merit a conclusion of nonretroactivity.[19] Accord *Hodge* v. *Hodge,* 178 Conn. 308, 320–23, 422 A.2d 280 (1979)." *Neyland* v. *Board of Education,* supra, 182–83.

In the present case, our decision concerns the application of a subject matter jurisdictional statute. Therefore, the *Chevron Oil Co.* test does not apply. Moreover, the bondsman has not articulated, nor do we perceive, any exceptional circumstances or overriding needs of public policy to exist, such as those at work in *Northern Pipeline Construction Co.* v. *Marathon Pipe Line Co.,* supra, 458 U.S. 88, that would compel us to apply this jurisdictional decision nonretroactively.[20] Accordingly, we conclude that the Appellate Court properly determined that the bondsman, as a nonparty to the underlying criminal action, had no right of appellate review pursuant to § 52-263.

The judgment of the Appellate Court is affirmed.

In this opinion CALLAHAN, C. J., and BORDEN, KATZ and PALMER, Js., concurred.

BERDON, J., with whom MCDONALD, J., joins, dissenting in part and concurring in part. The majority opinion in the present case reminds me of something

[19] In *Northern Pipeline Construction Co.* v. *Marathon Pipe Line Co.,* supra, 458 U.S. 87, the United States Supreme Court concluded that the grant of jurisdiction to the bankruptcy courts contained in 28 U.S.C. § 1471 was unconstitutional. The court determined that its decision would apply only prospectively because to apply the decision retroactively would result in "substantial injustice and hardship upon those litigants who relied upon the [a]ct's vesting of jurisdiction in the bankruptcy courts." Id., 88.

[20] We note that although the bondsman does not have a right to appellate review pursuant to § 52-263, the remedy of a writ of error is not categorically foreclosed for untimeliness, either in this case or in a case involving a similarly situated nonparty to the underlying action. See *Banks* v. *Thomas,* 241 Conn. 569, 586, 698 A.2d 268 (1997) (noncompliance with statutory two week limitation period for filing writ of error did not deprive court of subject matter jurisdiction over writ of error).

attributed to Mark Twain: "The more you explain it, the more I don't understand it."[1]

According to my colleagues in the majority, their opinion that the appellant is not a party—and, therefore, that it does not have standing to assert an appeal pursuant to General Statutes § 52-263—can be harmonized with our precedents. I disagree.[2] For this reason, I dissent in part. That said, I also concur in part, because I agree with the majority's decision to authorize the appellant to assert an appeal by way of a writ of error. In my view, justice demands no less.

In the present case, the defendant Ralston Salmon was arrested and charged with narcotic offenses. He was released on a surety bond of $150,000. The appellant, B & B Bail Bonds Agency, Inc., was the surety on the bond. The defendant failed to appear in court, which triggered the forfeiture of the bond. Shortly thereafter, the appellant located the defendant in Jamaica. Because the appellant did not have the authority to bring the defendant before the court, it requested that the state's attorney initiate proceedings to extradite the defendant to Connecticut. The state's attorney refused. Nevertheless, the trial court declined to release the appellant from its obligation as the surety on the defendant's

---

[1] Attributed to Mark Twain in *Securities & Exchange Commission* v. *Cherney Corp.*, 332 U.S. 194, 214, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947) (Jackson, J., dissenting). In *Securities & Exchange Commission*, Justice Jackson dissented in order to set forth his view that the court's jurisprudence was being swayed by "a fundamental change in prevailing philosophy." Id., 212. In frustration and despair, Justice Jackson stated: "I give up." Id., 214. I know exactly where he was coming from.

[2] Significantly, the majority (1) "disavow[s] any . . . reading" of our prior opinions that conflicts with the result that it has reached and (2) announces that, to the extent necessary, "our precedents . . . are hereby overruled." These bold strokes of the pen belie the majority's claim that their decision today comports with the principle of stare decisis. I fear that these statements will be the cause of substantial mischief in future cases.

bond. My colleagues in the majority lend their imprimatur to this ruling, on the ground that the appellant is not a party, and therefore lacks standing to assert an appeal.

In order to reach this result, the majority opinion must attempt to distinguish a very recent opinion that attracted the votes of four members of the panel in the present case. This distinction does not hold water. In *Day* v. *Middletown*, 245 Conn. 437, 440, 716 A.2d 47 (1998), the court[3] set forth the following general rule: "In order to be deemed a party and maintain an appeal, a litigant must satisfy each of three criteria. The litigant must (1) have a specific, personal and legal interest in the subject matter of the appeal . . . (2) sustain that interest throughout the course of the appeal . . . and (3) be able to obtain some practical benefit or relief. . . . *Craig* v. *Maher*, 174 Conn. 8, 9–10, 381 A.2d 531 (1977). In short, a party is a litigant with a personal stake in the outcome of the controversy. *Rose* v. *Freedom of Information Commission*, 221 Conn. 217, 223, 602 A.2d 1019 (1992)." (Internal quotation marks omitted.) Applying this rule to the facts of *Day*, we held that a law firm representing a plaintiff in a worker's compensation case was "a de facto party" for purposes of appealing from a reduction of its fee, even though it had been neither the plaintiff nor the defendant in the underlying action. *Day* v. *Middletown*, supra, 442.

According to the majority in the present case, "[t]his court concluded [in *Day*] that the law firm was [a] . . . de facto party . . . because, *for purposes of [the] statute [at issue in Day]*, '[i]n short, a party is a litigant with a personal stake in the outcome of the controversy.' [*Day* v. *Middletown*, supra], 440." (Emphasis added.) The majority emphasizes that the law firm in

---

[3] The panel in *Day* included Justice Norcott (the author of the majority opinion in the present case) as well as Justices Borden and Palmer (both of whom have joined the majority opinion). I was the author of the majority opinion in *Day*.

*Day* asserted an appeal pursuant to General Statutes § 31-301b, whereas the appellant in the present case wishes to assert an appeal pursuant to § 52-263. This is a distinction without a difference, for the following reason: the general rule that we set forth in *Day* is not limited to the context of § 31-301b. In fact, the language that the majority quotes from *Day* is itself a quotation from *Rose* v. *Freedom of Information Commission,* supra, 221 Conn. 223, a case that *did not involve an appeal pursuant to § 31-301b.*[4]

The majority attempts to rationalize its effort to distinguish *Day* on the ground that the statute at issue in *Day* refers to "*any* party," whereas the statute at issue in the present case refers to "*either* party." The majority's argument proceeds as follows: " 'either' is defined as 'each of two; or the other of two alternatives.' [Black's Law Dictionary (6th Ed. 1990)]. The use of the word 'either' . . . implies a narrower universe of possible appellants than where the term 'any' is used; 'either party' being limited to those persons or entities that are on one of two sides of a matter before the court, that is, the side of the plaintiff or of the defendant." The only flaw with this argument is that the same lexicon upon which the majority relies states with unmistakable clarity that the word "either" is "[o]ften used

---

[4] In the following passage from *Day,* the emphasized language is quoted from cases—one of which this court decided over twenty years ago—that do *not* involve appeals asserted pursuant to § 31-301b: "In order to be deemed a party and maintain an appeal, a litigant must satisfy each of three criteria. The litigant must *(1) have a specific, personal and legal interest in the subject matter of the appeal . . . (2) sustain that interest throughout the course of the appeal . . . and (3) be able to obtain some practical benefit or relief. . . . Craig* v. *Maher,* [supra, 174 Conn. 9–10]. In short, a party is a litigant with a *personal stake in the outcome of the controversy. Rose* v. *Freedom of Information Commission,* [supra, 221 Conn. 223]." (Emphasis added; internal quotation marks omitted.) *Day* v. *Middletown,* supra, 245 Conn. 440.

Nowhere in *Day* did we either state or imply that the general rule of law that we discussed in that case was limited to the context of § 31-301b.

. . . with reference to more than two, *in which case it may mean* . . . *'any'* . . . ." (Emphasis added.) Black's Law Dictionary (6th Ed. 1990).

The majority also cites Black's Law Dictionary for the proposition that the "technical legal meaning" of the term "party" is "those by or against whom a legal suit is brought . . . the party plaintiff or defendant . . . ." (Internal quotation marks omitted.) The majority correctly observes that this definition is cited in, inter alia, *Rose* v. *Freedom of Information Commission*, supra, 225–26. What the majority neglects to mention, however, is that *Rose* also contains the following passage: "While 'party' has an ordinary, technical usage . . . it has a 'commonly approved usage' as well. . . . Where a word in a statute has more than one possible meaning, and one meaning might lead to practical difficulties or constitutional infirmities, we should consider whether the legislature intended to adopt the other meaning. Black's Law Dictionary [also] defines 'party' as '[a] person concerned or having or taking part in any affair, matter, transaction or proceeding, considered individually' and further notes that '"party" is not restricted to strict meaning of plaintiff or defendant in a lawsuit.' Interpreting 'party' in this broad manner avoids any possible encroachment on the due process rights of persons who, although not technically 'parties' to the underlying [actions], are nevertheless aggrieved . . . ." (Citation omitted.) Id., 227.

Finally, I wish to emphasize the majority's determination that the appellant is entitled to assert an appeal by way of a writ of error. See footnote 20 of the majority opinion. In my view, it would have been exceedingly unfair (and probably unconstitutional) to change our law as the majority has done today, then preclude the appellant from asserting an appeal that it would have been entitled to assert under the law as it existed at the time that it was aggrieved. For this reason, I join

this aspect of the majority opinion, notwithstanding my belief that the appellant is entitled to assert an appeal pursuant to § 52-263.

Accordingly, I dissent in part and concur in part.