MARC WEINER ET AL. *v.* MICHAEL H.
CLINTON ET AL.
(AC 27012)

Gruendel, Harper and West, Js.

Argued December 6, 2006—officially released April 24, 2007

*Thomas P. Willcutts*, for the appellants (plaintiffs).

*Elizabeth M. Cristofaro*, with whom, on the brief, was *Christopher J. Sochacki*, for the appellees (defendant Steven W. Varney et al.).

*Opinion*

HARPER, J. This is a legal malpractice action brought by the plaintiffs, Marc Weiner and TMG Marketing, Inc., against the defendant law firm of Brown, Paindiris & Scott, LLP, and one of its partners, the defendant Steven W. Varney.[1] On appeal, the plaintiffs challenge the trial

---

[1] The named defendant is not a party to this appeal. We therefore refer in this opinion to the law firm and Varney as the defendants.

court's dismissal of their claims as unripe for adjudication. We reverse the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On December 7, 2004, the plaintiffs filed a complaint alleging that the defendants had failed to represent them adequately in earlier litigation brought against the plaintiffs by one of their former clients (underlying litigation). See *Lawton* v. *Weiner*, 91 Conn. App. 698, 882 A.2d 151 (2005). The centerpiece of the complaint was the plaintiffs' allegation that the defendants had caused the entry of a default judgment against them by negligently failing to respond to discovery requests. The plaintiffs further claimed that the court refused to set aside the default judgment on account of the defendants' false representation that they were not late in filing the discovery responses and the defendants' failure to file a timely notice of defenses. Additionally, the plaintiffs alleged, inter alia, that Varney's failure to apprise them of the defendants' negligence and available remedies therefor constituted a breach of his fiduciary duty. As a result of these various acts and omissions, the plaintiffs claimed to have sustained damages that included (1) the entry of a $532,656.92 default judgment against them, as well as an award of postjudgment interest thereon, (2) an undetermined amount of continuing legal expenses incurred in an effort to overturn the default judgment, (3) loss of a $25,586.07 arbitration award and (4) loss of the legal fees paid to the defendants for their services.

At the time that the plaintiffs instituted this legal malpractice action, they were still appealing from the court's denial of their motion to set aside the judgment of default in the underlying litigation. On March 30, 2005, the defendants moved to dismiss the complaint on the ground that the plaintiffs' claims were unripe for review. In support of their motion, the defendants cited four Superior Court decisions, which, they argued,

held that a legal malpractice action is unripe if the amount of damages is contingent on the outcome of some other litigation.

In a memorandum of decision issued on August 17, 2005, the court agreed that the pendency of the appeal rendered it "impossible" to determine damages, which is an essential element of a legal malpractice claim. The court further concluded that the plaintiffs' claims could not become ripe for adjudication until after this court issued an opinion in the appeal from the underlying litigation. Consequently, the court held that the plaintiffs' claims were not justiciable at that time and dismissed the action for lack of subject matter jurisdiction. The court subsequently denied a motion for reconsideration and reargument.

The plaintiffs appealed from the dismissal on October 17, 2005. Two weeks before the filing of their appeal, however, this court issued its opinion in the underlying litigation affirming the judgment of the trial court. See *Lawton* v. *Weiner*, supra, 91 Conn. App. 698. The plaintiffs did not file a petition for certification to appeal to our Supreme Court, and the judgment became final on October 4, 2005.[2]

We begin by setting forth the applicable standard of review as stated by our Supreme Court. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the

---

[2] On December 16, 2005, the plaintiffs moved to set aside the judgment of dismissal on the ground that the resolution of the appeal in the underlying litigation rendered their claims ripe for adjudication. The trial court denied the motion because "no legal authority [was] cited" by the plaintiffs. The plaintiffs did not amend their appeal pursuant to Practice Book § 61-9 to include the denial of this motion.

court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *Filippi* v. *Sullivan*, 273 Conn. 1, 8, 866 A.2d 599 (2005).

The sole issue presented is whether a legal malpractice claim remains unripe, and thus not justiciable, until the final resolution of the underlying action. "[J]usticiability comprises several related doctrines, namely, standing, ripeness, mootness and the political question doctrine, that implicate a court's subject matter jurisdiction and its competency to adjudicate a particular matter." *Office of the Governor* v. *Select Committee of Inquiry*, 271 Conn. 540, 569, 858 A.2d 709 (2004). "Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . Finally, because an issue regarding justiciability raises a question of law, our appellate review is plenary." (Citations omitted; internal quotation marks omitted.) Id., 568–69.

The guidepost for our analysis must be our Supreme Court's decision in *Mayer* v. *Biafore, Florek & O'Neill*, 245 Conn. 88, 713 A.2d 1267 (1998), a case that also involved a ripeness challenge to a legal malpractice action. In *Mayer*, the alleged legal malpractice occurred during the course of litigation arising out of an automobile accident. Id., 90. According to the complaint, the plaintiff's attorneys negligently failed to file an action against his automobile insurance carrier invoking the underinsured motorist provision of his insurance policy. Id., 89. As a result of his attorneys' inaction, the plaintiff claimed that he was now prohibited from taking such action by the time limits imposed both by law and by the terms of his insurance policy. Id.

With regard to the ripeness of his claim, the difficulty was that the plaintiff had never received a judicial determination that the delay in filing the action against his automobile insurance company had in fact rendered his claim untimely under Connecticut law and the provisions of his insurance policy. Id., 90. Indeed, the plaintiff had not initiated suit against his automobile insurance carrier in an attempt to enforce the underinsured motorist provision of his insurance policy. Id., 91. On the basis of those two facts, this court had held that the case was unripe because the plaintiff had no means of establishing causation and damages. See *Mayer* v. *Biafore, Florek & O'Neill*, 45 Conn. App. 554, 696 A.2d 1282 (1997), rev'd, 245 Conn. 88, 713 A.2d 1267 (1998).

Our Supreme Court reversed the judgment of this court and held that the plaintiff's legal malpractice claim was ripe even without a judicial determination that the plaintiff's action against his automobile insurance company was time barred. *Mayer* v. *Biafore, Florek & O'Neill*, supra, 245 Conn. 90. The court concluded that the action ripened when the plaintiff's claim against his insurance company *"legally was subject* to dismissal" by a court, irrespective of whether it had been actually dismissed. (Emphasis added.) Id., 91.

In explaining its reasoning, the court stated: "The fact that the [plaintiff's attorneys] contest the issues of causation and damages does not require the plaintiff first to file an action against [his insurance carrier]. Merely because the issues in this case concern claims between a party and a nonparty does not require such an action. To require the plaintiff to obtain a separate ruling that his uninsured motorist action is time barred does not further judicial economy. We should not unnecessarily add extra cases to the already overcrowded court dockets. All legal malpractice cases are based on underlying rights, for which the plaintiff originally sought legal representation. To require that the

underlying dispute as to those rights, in all cases, must be completely resolved prior to bringing a malpractice action would unduly restrict the plaintiff's remedy against the allegedly negligent lawyer. Here, because the trier of fact hearing the plaintiff's malpractice case must determine, on the basis of proper instructions as to the law, whether an uninsured motorist action is time barred, there is no need for a prior determination that the statute of limitations has run as a condition precedent to the plaintiff pursuing this case." Id., 92.

Giving proper heed to these considerations, we now turn to the facts of this case. In *Mayer*, the legal malpractice action was ripe for adjudication notwithstanding the fact that the plaintiff had not begun litigating the merits of the claim from which the allegation of malpractice arose. As applied here, the holding of that case strongly suggests that the plaintiffs' claims were ripe for adjudication even though the plaintiffs were still appealing from the judgment in the underlying litigation.

Beyond noting this facial inconsistency with our Supreme Court's decision in *Mayer*, we also must note that the dismissal of this case evinces a deeper conflict with the basic principles of justiciability.[3] A claim's justiciability must be established in order for a court to exercise subject matter jurisdiction. Because justiciability is a prerequisite for invocation of a court's jurisdiction, its requirements are quite specific: (1) an actual controversy between the parties, (2) adversity of interests between the parties, (3) the capacity of a judicial authority to adjudicate the matter and (4) the ability to procure practical relief for the plaintiff through resolution of the dispute. *Office of the Governor* v. *Select*

[3] We also note that the dismissal of this case does not comport with our Supreme Court's pronouncement of "the principle that every presumption is to be indulged in favor of subject matter jurisdiction." *Sheff* v. *O'Neill*, 238 Conn. 1, 15, 678 A.2d 1267 (1996).

*Committee of Inquiry*, supra, 271 Conn. 569. When assessing the existence of those four elements, our Supreme Court has advised courts to examine whether the case "present[s] a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire." *Milford Power Co., LLC* v. *Alstom Power, Inc.*, 263 Conn. 616, 626, 822 A.2d 196 (2003).

We fail to understand, and the defendants do not explain, how the pendency of the appeal in the underlying litigation affected the plaintiffs' ability to meet those four requirements. A claim's justiciability is wholly separate from its merits. See id. As such, an inability to establish the exact amount of damages is indicative of a defect in a plaintiff's capacity to prove his or her case, not of a deficiency in the court's subject matter jurisdiction.

Here, the injury—the entry of the default judgment— already had occurred, as had the loss of the plaintiffs' arbitration award and legal fees paid to the defendants. The expenses associated with appealing from the default judgment were still accumulating, but they were by no means "hypothetical." Similarly, the viability of the plaintiffs' legal malpractice claim was not "contingent upon some event that ha[d] not . . . transpire[d]." Id., 626. The court had already rendered judgment of default against the plaintiffs, allegedly as a result of the defendants' negligent failure to respond to discovery requests. Overall then, the complaint's allegations, if proven, would have been sufficient to establish a cause of action against the defendants for legal malpractice.

In reaching the opposite conclusion, the trial court interpreted *Mayer* as setting forth the rule that a legal malpractice action should be dismissed as unripe if "damages [are] contingent upon other matters." For textual support, the court quoted the following passage from *Mayer*: "All legal malpractice cases are based on

underlying rights . . . . To require that the underlying dispute as to those rights, *in all cases*, must be completely resolved prior to bringing a malpractice action would unduly restrict the plaintiff's remedy against the allegedly negligent lawyer." (Emphasis added.) *Mayer* v. *Biafore, Florek & O'Neill*, supra, 245 Conn. 92.

*Mayer* did not establish a new rule obviating, in all circumstances, the need to resolve any underlying litigation before instituting an action for legal malpractice. On the other hand, there is no indication that the court's use of the words "in all cases" signaled the imposition of a new condition for establishing ripeness—finality of damages. Indeed, such an interpretation squarely would contradict *Mayer*'s statement that "[t]he fact that defendants contest the issues of causation and damages does not require the plaintiff first to file an action [commencing the underlying litigation]." Id.

The defendants offer two additional arguments to support their contention that, pursuant to *Mayer*, a legal malpractice claim cannot become ripe until the conclusion of any underlying litigation related to such action.[4] First, the defendants contend that *Mayer* can

---

[4] The defendants also rely on *Sosin* v. *Scinto*, 57 Conn. App. 581, 750 A.2d 478 (2000), to support their claim that "[t]his [c]ourt [has] previously concluded that the inability of a court to determine the existence or actual amount of a plaintiff's claimed damages results in a matter not being justiciable." Yet, our review of *Sosin* reveals that it is factually distinguishable from the case at hand. In *Sosin*, the plaintiffs' complaint sought damages "to the extent they [could not] recover in arbitration." Id., 587. Because the plaintiffs were appealing the granting of an injunction against compelling arbitration, this court held that their claims, as alleged in their complaint, were incapable of being adjudicated at that time. Id., 587–88.

The critical fact in *Sosin*, therefore, was that the plaintiffs, *by the way in which they pleaded damages in their complaint*, inextricably tied their present action to the prior action. That is clearly not the situation here. As a consequence, we deem *Sosin* to be inapposite to our consideration of the dismissal in the present case.

be seen as hinging the ripeness of a legal malpractice action on the complexity and nature of the claims raised in the underlying litigation. We do not find any textual support for such a reading. *Mayer*'s application of the ripeness doctrine was not focused on the fact that the underlying litigation involved a statute of limitations claim as opposed to some other type of claim. Nor did our Supreme Court indicate that the ripeness of the legal malpractice action was dependent on the relative simplicity of the claim in the underlying litigation. On the contrary, the expansive language used by the court, as well as its broad statements of policy, clearly demonstrates that neither of those factors had any impact on the court's ultimate conclusion that the legal malpractice claim in that case was ripe for adjudication.

Second, the defendants rely on the language used by this court in *Fontanella* v. *Marcucci*, 89 Conn. App. 690, 877 A.2d 828, cert. granted, 275 Conn. 907, 882 A.2d 670 (2005) (appeal withdrawn March 8, 2006). Having reviewed *Fontanella*, however, we believe that the issue presented by that case was markedly different from the one raised in this case. Notably, in *Fontanella*, the plaintiff's legal malpractice action was dismissed because of the expiration of the statute of limitations, not on the basis of the doctrine of ripeness. The plaintiffs did not appeal from the earlier dismissals for lack of ripeness, and the propriety of those dismissals was not before this court. Accordingly, this court in *Fontanella* considered only whether, under the facts of that case, the pendency of the litigation underlying the legal malpractice action could toll the statute of limitations.

We conclude that neither *Mayer* nor *Fontanella* can properly be read as requiring dismissal of a legal malpractice action if "damages [are] contingent upon other

matters." Grafting such a requirement onto the ripeness doctrine would, in effect, nullify the general rule that in most cases, there is no need to wait until the conclusion of the underlying litigation to initiate a legal malpractice action.[5] Here, the allegations set forth in the complaint satisfied all four elements of justiciability and were all that was necessary for the court to properly exercise subject matter jurisdiction over the action.

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.

---

[5] We also are convinced that requiring dismissal on ripeness grounds whenever the amount of damages is "contingent upon other matters" not only contravenes the holding and spirit of *Mayer* but ultimately leads to results that are in some instances impracticable and, in all cases, undesirable. As the trial court recognized, looming behind *Mayer*'s concern about "unduly restrict[ing] the plaintiff's remedy"; *Mayer* v. *Biafore, Florek & O'Neill*, supra, 245 Conn. 92; is a danger of creating an inescapable "catch-22" through the interaction of the doctrine of ripeness and the statute of limitations. In order to avoid the statute of limitations bar imposed by General Statutes § 52-577, a plaintiff must initiate suit against the attorney within three years of the date of the occurrence of the allegedly negligent conduct. Yet, "[o]ver-crowded dockets" and "burgeoning caseloads"; *In re Mongillo*, 190 Conn. 686, 690–91, 461 A.2d 1387 (1983), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 154–55, 735 A.2d 333 (1999) (en banc); make it unlikely that most lawsuits will be adjudicated to their finality within three years.

As such, construing ripeness to require resolution of the underlying litigation would lead to a peculiar state of affairs, namely, that every "ripe" claim of this sort will almost always be untimely. Mindful that ripeness is a judicially created doctrine, we are loathe to permit its application in this manner.