EDWARD ROSENFIELD *v.* I. DAVID MARDER AND
ASSOCIATES, LLC, ET AL.
(AC 28208)

Flynn, C. J., and Harper and Beach, Js.

Argued April 28—officially released October 7, 2008

*A. Alan Sheffy*, for the appellant (plaintiff).

*Linda D. D'Albis*, for the appellees (defendants).

*Opinion*

BEACH, J. In this breach of contract action, the plaintiff, Edward Rosenfield, appeals from the summary judgment rendered by the trial court in favor of the

defendants, I. David Marder & Associates, LLC, and Marder & Kallet. On appeal, the plaintiff claims that the court improperly granted the defendants' motion for summary judgment on the ground that the action was commenced beyond the applicable statute of limitations, General Statutes § 52-581.[1] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. This appeal involves three successive legal malpractice actions. In *Rosenfield* v. *Rogin, Nassau, Caplan, Lassman & Hirtle, LLC*, 69 Conn. App. 151, 795 A.2d 572 (2002), we set forth the following facts with respect to the initial malpractice action. "The initial legal malpractice action arose out of a foreclosure matter in which Levy & Droney, P.C. (Levy), represented the plaintiff. See *Rosenfield* v. *Cymbala*, Superior Court, judicial district of Middlesex, Docket No. CV-90-0060180-S (December 18, 1992). In that foreclosure action, the court, *Higgins, J.*, orally rendered a judgment of dismissal on December 1, 1992, and issued a written memorandum of decision on December 18, 1992. Levy appealed from the judgment of dismissal on behalf of the plaintiff, and we affirmed the judgment in a per curiam opinion. *Rosenfield* v. *Cymbala*, 33 Conn. App. 931, 636 A.2d 881 (1994).

"Following our decision, Levy brought a second foreclosure action on the plaintiff's behalf, which resulted in a summary judgment in favor of the foreclosure defendant based on the doctrine of res judicata. *Rosenfield* v. *Cymbala*, Superior Court, judicial district of Middlesex, Docket No. CV-94-0072816-S (August 23,

---

[1] General Statutes § 52-581 (a) provides: "No action founded upon any express contract or agreement which is not reduced to writing, or of which some note or memorandum is not made in writing and signed by the party to be charged therewith or his agent, shall be brought but within three years after the right of action accrues."

1995). Levy again filed an appeal, but before we decided the case, the plaintiff retained the [services of the law firm of Rogin, Nassau, Caplan, Lassman & Hirtle, LLC (Rogin Nassau)] to bring a malpractice action against Levy for negligence in handling the foreclosure action. We subsequently affirmed the court's judgment. *Rosenfield* v. *Cymbala*, 43 Conn. App. 83, 681 A.2d 999 (1996).

"[Rogin Nassau] served a complaint on Levy on December 15, 1995. In September, 1996, the [defendants] filed an appearance on the plaintiff's behalf in lieu of [Rogin Nassau]. Levy subsequently filed a motion for summary judgment, alleging that the action was barred by the statute of limitations set forth in General Statutes § 52-577.[2] Levy claimed that the complaint served on December 15, 1995, was untimely because the three year statute of limitations had begun to run on the date of the court's oral decision on December 1, 1992. [The defendants] argued that the filing was timely because the statute of limitations had begun to run when the memorandum of decision was issued on December 18, 1992. The court, *Wagner, J.*, agreed with Levy and rendered a summary judgment in its favor. *Rosenfield* v. *Levy & Droney, P.C.*, Superior Court, judicial district of Hartford, Docket No. CV-96-0556791-S (April 16, 1997). No appeal was taken from Judge Wagner's decision." *Rosenfield* v. *Rogin, Nassau, Caplan, Lassman & Hirtle, LLC*, supra, 69 Conn. App. 152–53.

The defendants continued to represent the plaintiff and initiated a second legal malpractice action, this time against Rogin Nassau. In this second malpractice action, it was alleged that Rogin Nassau was professionally negligent by failing to commence the legal malpractice action against Levy within the limitations period

[2] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

set forth in § 52-577. See *Rosenfield* v. *Rogin Nassau,* Superior Court, judicial district of Hartford, Docket No. CV-97-0568522-S (April 12, 2000). Rogin Nassau filed a motion for summary judgment, claiming that notwithstanding Judge Wagner's ruling, it had filed the complaint on the plaintiff's behalf against Levy in a timely manner. Rogin Nassau claimed that Levy's legal representation of the plaintiff continued through the first appeal of the foreclosure action, which representation tolled the statute of limitations until at least February 1, 1994, the date this court affirmed the first judgment of dismissal of the foreclosure action in *Rosenfield* v. *Cymbala,* supra, 33 Conn. App. 931–32. Rogin Nassau further contended that the complaint served on December 15, 1995, therefore, was timely. On August 9, 1999, argument was heard on Rogin Nassau's motion for summary judgment.

On November 9, 1999, the plaintiff's present counsel filed an appearance in lieu of the defendants, and the defendants no longer represented the plaintiff. On April 12, 2000, the court, *Peck, J.,* rendered summary judgment in favor of Rogin Nassau. The plaintiff appealed from the court's judgment. On April 16, 2002, this court affirmed the judgment of the trial court. See *Rosenfield* v. *Rogin, Nassau, Caplan, Lassman & Hirtle, LLC,* supra, 69 Conn. App. 151.

Following that appeal, the plaintiff brought a third legal malpractice action, this time against the present defendants. On September 16, 2003, the defendants were served with a writ of summons and complaint. On January 13, 2006, the plaintiff filed an amended complaint for breach of contract. He alleged, inter alia, that the defendants "expressly or impliedly promised the [p]laintiff a specific result: that the [p]laintiff,

through the efforts of the [d]efendants, would be successful in recovering on his claim against Rogin Nassau."[3] The defendants filed a motion for summary judgment. They asserted that there were no genuine issues of material fact relative to the applicable statute of limitations and that as a matter of law, the plaintiff's claims were barred by the statute of limitations, specifically §§ 52-577 and 52-581. The court, *R. Robinson, J.*, granted the defendants' motion for summary judgment. It reasoned that the plaintiff's claims in his amended complaint were barred by § 52-581. This appeal followed.

We first set forth the applicable standard of review. "[T]he scope of our review of the granting of a motion for summary judgment is plenary. . . . In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) *Rosenfield* v. *Rogin, Nassau, Caplan, Lassman & Hirtle, LLC*, supra, 69 Conn. App. 156–57; see also Practice Book § 17-49. "Summary judgment may be granted where the claim is barred by the statute of limitations." *Doty* v. *Mucci*, 238 Conn. 800, 806, 679 A.2d 945 (1996).

The plaintiff claims that the court improperly granted the defendants' motion for summary judgment on the

---

[3] In the amended complaint, the plaintiff also alleged that "[t]he [d]efendants expressly and impliedly promised the plaintiff a specific result: that the plaintiff, through the efforts of the [d]efendants, would be successful in recovering on his claim against [Levy]." On appeal, the plaintiff makes no claim with respect to this allegation.

ground that his action was barred by § 52-581.[4] The plaintiff notes that the complaint alleged that the defendants made an express oral contract promising the plaintiff the specific result of a successful resolution in the malpractice action against Rogin Nassau. He argues that the statute of limitations began to run on April 16, 2002, the date on which this court affirmed the decision of Judge Peck rendering summary judgment in favor of Rogin Nassau. We disagree.

Because it is agreed that the complaint in this action was served on September 16, 2003, and that the applicable limitations period is three years, the question to be resolved is whether the cause of action in contract accrued prior to September 16, 2000. "[I]n an action for breach of contract . . . the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted. . . . Although the application of this rule may result in occasional hardship, [i]t is well established that ignorance of the fact that damage has been done does not prevent the running of the statute, except where there is something tantamount to a fraudulent concealment of a cause of action. . . . While the statute of limitations normally begins to run

---

[4] The plaintiff did not allege in his complaint that the agreement to obtain a successful result was anything other than an executory contract and made no claim that General Statutes § 52-576 is applicable in the present case. The plaintiff, in fact, conceded at oral argument before this court that the applicable period of limitations was three years. See *Bagoly* v. *Riccio*, 102 Conn. App. 792, 799, 927 A.2d 950 (§ 52-581 applies to executory contracts; § 52-576 applies to executed oral contracts), cert. denied, 284 Conn. 931, 934 A.2d 245, 246 (2007).

The complaint alleged breach of an agreement to obtain a specific result and, as such, properly stated a claim for breach of contract. "It is well settled that an attorney may be subject to a claim for breach of contract arising from an agreement to perform professional services." *Celentano* v. *Grudberg*, 76 Conn. App. 119, 124, 818 A.2d 841, cert. denied, 264 Conn. 904, 823 A.2d 1220 (2003). A claim in which a plaintiff asserts that a defendant who is a professional breached an agreement to obtain a specific result states a true contract claim. *Caffery* v. *Stillman*, 79 Conn. App. 192, 197, 829 A.2d 881 (2003).

immediately upon the accrual of the cause of action, some difficulty may arise in determining when the cause or right of action is considered as having accrued." (Citation omitted; internal quotation marks omitted.) *Amoco Oil Co.* v. *Liberty Auto & Electric Co.*, 262 Conn. 142, 153, 810 A.2d 259 (2002). "The true test for determining the appropriate date when a statute of limitations begins to run is to establish the time when the plaintiff first successfully could have maintained an action.[5] That is, an action cannot be maintained until a right of action is complete and hence, the statute of limitations cannot run before that time." (Internal quotation marks omitted.) *Garofalo* v. *Squillante*, 60 Conn. App. 687, 694, 760 A.2d 1271 (2000), cert. denied, 255 Conn. 929, 767 A.2d 101 (2001). "A cause of action does not accrue for the purposes of a statute of limitations until all elements are present, including damages, however trivial. However, the occurrence of an act or omission—whether it is a breach of contract or of duty—that causes a direct injury, however slight, may start the statute of limitations running against the right to maintain an action even if the plaintiff is not aware of the injury, and even if all resulting damages have not yet occurred; it is sufficient if nominal damages are recoverable for the breach or for the wrong, and where that is the case, it is unimportant that the actual or substantial damage is not discovered or does not occur until later. The fact that the extent of the damages cannot be determined at the time of the wrongful act does not postpone the running of the statute of limitations." 51 Am. Jur. 2d 548–49, Limitation of Actions § 151 (2000).

When, then, would the plaintiff first have been able to maintain a cause of action alleging breach of contract

---

[5] "The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." (Internal quotation marks omitted.) *Rosato* v. *Mascardo*, 82 Conn. App. 396, 411, 844 A.2d 893 (2004).

against the defendants? There are three possible dates: November 9, 1999, the latest date the defendants represented the plaintiff; April 12, 2000, the date on which Judge Peck rendered summary judgment in favor of Rogin Nassau; and April 16, 2002, the date on which Judge Peck's ruling was affirmed on appeal.

Any alleged breach of contractual duty on the defendants' part triggering the three year statute of limitations would have occurred, at the latest, by April 12, 2000. By that date, the defendants no longer were representing the plaintiff and, as such, could no longer fulfill their alleged promise to him that *through the efforts of the defendants*, he would be successful in his action against Rogin Nassau. Also, by that date, the court had granted summary judgment in favor of Rogin Nassau. Both November 9, 1999, the date on which the defendants were replaced by other counsel, and April 12, 2000, the date on which Judge Peck rendered summary judgment in favor of Rogin Nassau, are earlier than September 16, 2000, which date is three years prior to the commencement of the action, which occurred on September 16, 2003. We need not determine, for purposes of this appeal, whether the statute of limitations began to run on November 9, 1999, or April 12, 2000.

Moreover, we determine that the statute of limitations did not begin to run, as the plaintiff contends, on April 16, 2002, when Judge Peck's decision rendering summary judgment in favor of Rogin Nassau was affirmed on appeal. *Weiner* v. *Clinton*, 100 Conn. App. 753, 919 A.2d 1038, cert. denied, 282 Conn. 928, 926 A.2d 669 (2007), is instructive on this issue.[6] In that

[6] *Weiner* v. *Clinton*, supra, 100 Conn. App. 753, concerned the issue of whether a legal malpractice claim remained unripe until the final resolution of an underlying action. Id., 757. The issue of ripeness in that case can help us understand when the cause of action in the present case accrued. There is, at least in this case, a relationship between ripeness and accrual. "The basic rationale [of the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." (Internal quotation marks omitted.) *Forcier* v. *Sunnydale Developers, LLC*, 84 Conn. App. 858, 865, 856 A.2d 416 (2004).

case, the plaintiffs sought to recover damages for legal malpractice and alleged that the defendant law firm and one if its partners had failed to represent them adequately in prior litigation brought against the plaintiffs. Id., 755. The centerpiece of the complaint was the plaintiffs' allegation that the defendants had caused the entry of a default judgment against them by negligently failing to respond to discovery requests. Id. The plaintiffs further claimed that the court had refused to set aside the default judgment because of the defendants' false representation that they were not late in filing the discovery responses and the defendants' failure to file a timely notice of defenses. Id. At the time the plaintiffs brought the legal malpractice action, they still were appealing from the trial court's denial of their motion to set aside the default judgment in the underlying litigation. Id. In that appeal, the plaintiffs raised claims attacking the court's subject matter jurisdiction, the propriety of the default and the damages awarded. See *Lawton* v. *Weiner*, 91 Conn. App. 698, 701, 882 A.2d 151 (2005).

This court in *Weiner* v. *Clinton*, supra, 100 Conn. App. 759, held that the plaintiffs' claims were ripe for adjudication even though the plaintiffs still were appealing from the judgment in the underlying litigation.[7] In explaining its reasoning, the court stated: "A claim's

"The justiciability of a claim is related to its ripeness." (Internal quotation marks omitted.) Id. "Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . The general rule is that a case is justiciable if it is capable of resolution on the merits by judicial action." (Internal quotation marks omitted.) Id. Similarly, a breach of contract action accrues when the cause of action is complete, that is, when an injury has been inflicted. See *Amoco Oil Co.* v. *Liberty Auto & Electric Co.*, supra, 262 Conn. 153.

[7] For the requirements of justiciability, see footnote 6.

justiciability is wholly separate from its merits. . . . As such, an inability to establish the exact amount of damages is indicative of a defect in a plaintiff's capacity to prove his or her case, not of a deficiency in the court's subject matter jurisdiction. Here, the injury—the entry of the default judgment—already had occurred, as had the loss of the plaintiffs' arbitration award and legal fees paid to the defendants. . . . [T]he viability of the plaintiffs' legal malpractice claim was not contingent upon some event that ha[d] not . . . transpire[d]." (Citation omitted; internal quotation marks omitted.) Id., 760.[8]

In the case at hand, the viability of the plaintiff's legal malpractice claim by at least April 12, 2000, was not contingent on an event that had not transpired; that is, it did not depend on whether a successful result eventually was obtained on appeal by someone other than the defendants.[9] As in *Weiner* v. *Clinton*, supra, 100 Conn. App. 753, the later progress of the case may have had some affect on the case, but the pendency of the appeal in the Rogin Nassau action did not delay the ability of the plaintiff to bring a claim for legal malpractice against the defendants.

The plaintiff argues, in the alternative, that if the statute of limitations was determined to have begun to run prior to April 16, 2002, the date on which the matter against Rogin Nassau was resolved on appeal, then it

---

[8] *Weiner* v. *Clinton*, supra, 100 Conn. App. 753, involved a tort claim and this case is premised in breach of contract. The analysis in that case as to when the harm occurs is, however, highly analogous to the present case.

[9] As stated by the United States Supreme Court in a different context, a trial on the merits should be the "main event . . . ." (Internal quotation marks omitted.) *Freytag* v. *Commissioner of Internal Revenue*, 501 U.S. 868, 895, 111 S. Ct. 2631, 115 L. Ed. 2d 764 (1991), citing *Wainwright* v. *Sykes*, 433 U.S. 72, 90, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). There may not be an appeal, and if there is an appeal, there, nonetheless, may be postjudgment matters and petitions for new trials. Some finality is essential.

was tolled pending the outcome of that appeal. In making this argument, the plaintiff cites *Fontanella* v. *Marcucci*, 89 Conn. App. 690, 877 A.2d 828, cert. granted, 275 Conn. 907, 882 A.2d 670 (2005) (appeal withdrawn March 8, 2006), for the proposition that "if the prior action does prevent enforcement of the remedy sought in the later action, then the pendency of the prior action can toll the statute of limitations in the later action." Id., 700. The plaintiff argues that he was not able to bring his action against the defendants until the appeal in the underlying action against Rogin Nassau was resolved. The plaintiff's argument and reliance on *Fontanella* is misplaced.

In *Fontanella*, the plaintiffs, Michael Fontanella, a minor, and his mother, Rose Fontanella, sought to recover damages for legal malpractice and breach of contract from the defendant attorneys, who had represented the plaintiffs in a prior product liability action. The plaintiffs had brought that action against the manufacturer of a car owned by Rose Fontanella that was involved in a single automobile collision: Michael Fontanella drove off the road and struck a tree. Id., 694. The plaintiffs claimed, in the legal malpractice action, that the defendants had been negligent in advising Rose Fontanella to destroy the vehicle rather than advising her to preserve it for inspection and evidence in the underlying product liability action. Id. The plaintiffs brought the legal malpractice action after two prior actions for legal malpractice had been dismissed as premature and nonjusticiable due to the pendency of the product liability action and an appeal relating thereto. Id., 695. In the plaintiffs' third attempt to maintain a legal malpractice action, the trial court granted the defendants' motion for summary judgment. It concluded that the legal malpractice action was barred by the three year statute of limitations for tort and the six year statute of limitations for breach of contract claims.

Id., 696–97. A panel of this court reversed the judgment of the trial court and held that the pendency of the underlying product liability action tolled the statutes of limitation for the legal malpractice action. The panel reasoned that the viability of the plaintiffs' legal malpractice and contract claims were contingent on the outcome of the underlying product liability action. Id., 701. The *Fontanella* court narrowly concluded that "because of the complexity of the legal and factual issues arising out of the spoliation of evidence relating to the product liability claim, the legal malpractice claim was not capable of being adjudicated by the judicial power until the underlying product liability claim was resolved by final judgment." Id., 692.

In the case at hand, the plaintiff's malpractice claim was viable, at the latest, on the date Judge Peck rendered summary judgment in favor of Rogin Nassau. The accrual of the claim was not contingent on the outcome of the appeal from Judge Peck's decision. Instead, that outcome would pertain, if at all, to the remedy. "*Fontanella* [cannot] properly be read as requiring dismissal of a legal malpractice action if damages [are] contingent upon other matters. Grafting such a requirement onto the ripeness doctrine would, in effect, nullify the general rule that in most cases, there is no need to wait until the conclusion of the underlying litigation to initiate a legal malpractice action." (Internal quotation marks omitted.) *Weiner* v. *Clinton*, supra, 100 Conn. App. 762–63. The underlying product liability action in *Fontanella* involved whether a seat belt was defective, which is a question of fact. *Fontanella* v. *Marcucci*, supra, 89 Conn. App. 703–704. The *Fontanella* court expressly distinguished the facts of that case from situations, such as this case, involving questions of law, such as the question of whether a statute of limitations had run. Id.[10]

---

[10] *Fontanella* v. *Marucci*, supra, 89 Conn. App. 690, is distinct from the case at bar because in that case, the very existence of legal malpractice was contingent on whether the seat belt that allegedly caused injury had

Here, the matter was brought beyond the applicable statute of limitations. The statute of limitations began to run no later than April 12, 2000, and the action was commenced when the defendants were served with a writ of summons and complaint on September 16, 2003, more than three years later.[11] Therefore, the court properly granted the defendants' motion for summary judgment on the ground that it was brought beyond the statutory period set forth in § 52-581.

The judgment is affirmed.

In this opinion the other judges concurred.

been manufactured defectively or, alternatively, whether the belt and all such belts had been designed defectively. The gist of the plaintiff's malpractice complaint was that the plaintiff's former attorney had been negligent in failing to preserve the belt for expert inspection and use at trial. If the belt had been defective simply because of its design, however, that defect would have been common to all such belts.

Consequently, in that instance, the belt from any other vehicle could have been used to prove the case, and no legal malpractice would have occurred from failing to preserve the particular belt from the defendant's automobile. As *Fontanella* noted, citing *Mayer* v. *Biafore, Florek & O'Neill*, 245 Conn. 88, 713 A.2d 1267 (1998), the first prong of justiciability requires that there be an actual controversy between the parties to the dispute. If there were no consequence or significance to the lack of preservation, there could be no controversy between the plaintiff and the former attorney. Because of that prong, the Appellate Court in *Fontanella* held that the legal malpractice claim was tolled until that issue was resolved.

[11] "Legal actions in Connecticut are commenced by service of process." (Internal quotation marks omitted.) *Rios* v. *CCMC Corp.*, 106 Conn. App. 810, 820, 943 A.2d 544 (2008).