******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TOWN OF WINDSOR *v.* LOUREIRO ENGINEERING
ASSOCIATES ET AL.
(AC 39398)

Lavine, Alvord and Bear, Js.

*Syllabus*

The plaintiff town sought to recover damages for professional negligence
from, inter alia, the defendant architect firm and its individual employees
in connection with the collapse of the roof of a school auditorium in
2011. The plaintiff had retained the defendants and others, including F,
a structural engineer, to produce a report that summarized their analysis
of conditions at the school and their conclusion as to whether the
existing building was structurally sound so that it could be renovated
to standards comparable to a new building. The report was delivered
in 1998. The defendants pleaded as their special defense that the present
action was barred by the applicable seven year statute of limitations
(§ 52-584a). The plaintiff maintained, inter alia, that the "comparable to
new" analysis was never substantially completed and, thus, the statute
of limitations never began to run. In a series of rulings on certain pretrial
motions, the court ordered trial on the statute of limitations issue to
be bifurcated from the question of liability and prohibited any argument
to the jury that substantial completion had never occurred, ruling that
the question for the jury was when, not whether, substantial completion
occurred. After trial began, the court, sua sponte, reconsidered the
defendants' earlier motion to dispense with the jury and decide the
statute of limitations question as a matter of law, and ordered the parties
to brief the factual issues and submit admissible evidence akin to a
motion for summary judgment. Thereafter, the court rendered judgment
in favor of the defendants on their statute of limitations defense. The
plaintiff appealed to this court, claiming that that the defendants failed
to satisfy their burden to demonstrate that the action was commenced
outside the seven year limitation period, as the allegations in its com-
plaint as well as certain documentary evidence and deposition testimony
left open a wide range of possible dates of negligence beyond the seven
year limitation period. *Held* that the trial court properly rendered judg-
ment in favor of the defendants on their statute of limitations defense,
the defendants having established that there was no genuine issue of
material fact that the plaintiff commenced this action outside the statu-
tory limitation period: by the plain terms of § 52-584a, an action against
an architect or engineer arising out of a deficiency in one or more of
the enumerated services must be brought within seven years after the
substantial completion of the improvement to real property, with the
date of substantial completion being the date the improvement was
either first used or first available for use, and under the circumstances
here, where the report did not itself require or effect a physical alteration
of real property and there was no readily discernible date of substantial
completion of such an improvement to real property, the seven year
period began to run when the allegedly negligent design was completed,
and the defendants satisfied their burden of proving the plaintiff com-
menced this action more than seven years after the report was completed
and more than seven years after the plaintiff held a town referendum for
funding the renovation as recommended in the report, which occurred
in 1999; moreover, the plaintiff failed in its burden to substantiate its
claim that an issue of fact existed as to whether the defendants substan-
tially completed their report by failing to inform the plaintiff about the
defect in the auditorium roof, as such argument was contrary to the
plain language and purpose of § 52-584a, which was enacted to end
perpetual liability for architects and engineers, and, viewing the plain-
tiff's evidence in its most favorable light, the last date on which a jury
could have found that the defendants were still working on the report
was in 2000, the date of the last letter provided by the plaintiff in which
F affirmed the conclusions made in the report and which was more
than seven years before the plaintiff commenced this action.

Argued December 4, 2017—officially released April 24, 2018

Action to recover damages for the defendants' alleged professional negligence, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the defendant Charles V. Francis was defaulted for failure to plead; thereafter, the action was withdrawn as to the named defendant et al.; subsequently, the court, *Elgo, J.*, granted the motion to bifurcate the trial as to certain special defenses filed by the defendant Newman Architects, LLC, et al.; thereafter, the court denied the motion filed by the defendant Newman Architects, LLC, et al. to dispense with the jury and decide the special defenses as a matter of law; subsequently, the court, sua sponte, reconsidered its ruling on the motion to dispense with the jury and decide the special defenses as a matter of law and rendered judgment for the defendant Newman Architects, LLC, et al., from which the plaintiff appealed to this court. *Affirmed.*

*Daniel J. Krisch*, with whom, on the brief, were *John C. DeSimone*, pro hac vice, *John B. DiSciullo*, pro hac vice, and *Richard F. Wareing*, for the appellant (plaintiff).

*Leslie P. King*, with whom were *Christopher A. Klepps* and, on the brief, *Donald W. Doeg*, for the appellees (defendant Newman Architects, LLC, et al.).

*Opinion*

ALVORD, J. The plaintiff, the town of Windsor, appeals from the judgment of the trial court rendered in favor of the defendants Newman Architects, LLC, Herbert S. Newman, and Michael Raso.[1] On appeal, the plaintiff claims that the court improperly discharged the jury and rendered judgment as a matter of law on the defendants' special defense asserting that the plaintiff's action was barred by the seven year statute of limitations set forth in General Statutes § 52-584a. We conclude that the court properly rendered judgment as a matter of law in favor of the defendants and, accordingly, affirm the judgment.

The following facts and procedural history are relevant to our resolution of this appeal. The present appeal stems from a professional negligence action that the plaintiff commenced against the defendants after the auditorium roof at Windsor High School (school) collapsed under the weight of accumulated snow and ice on February 2, 2011.

The defendants previously had performed work for the plaintiff under two separate contracts for services relating to the school. Newman Architects, LLC, which employed Newman and Raso, provided architectural services and Barnhart, Johnson, Francis & Wild, Inc. (BJFW), which employed Charles Francis, provided structural engineering services. The parties designated the defendants' work performed pursuant to the first contract as the "report project." Specifically, the defendants were retained to produce what was called a "Comparable-to-New" report (report), which was required as part of the process for applying for renovation funding from the state of Connecticut pursuant to No. 96-270 of the 1996 Public Acts (P.A. 96-270).[2] The report summarized the defendants' analysis of conditions at the school and the defendants' conclusion as to whether the existing building was structurally sound, so that it could be renovated to standards comparable to a new building. The report was dated June 16, 1998, and was provided to the plaintiff on that day.

On June 29, 1998, the plaintiff submitted the report to the state as part of its application for renovation funding, which application was approved. On February 9, 1999, the town held a referendum on the $35 million appropriation and bond authorization for renovations at the school, which the town's residents voted to approve. By April 12, 1999, the plaintiff had paid the defendants in full for their work under the contract for the report project. In June, 1999, the parties entered into a separate, second contract for the design and construction of the renovation project at the school (renovation project).

The plaintiff commenced this action on July 14, 2011, five months after the auditorium roof collapsed. The

plaintiff alleged as the proximate cause of the collapse a deficient steel connection between the main truss and a supporting truss. The plaintiff alleged, inter alia, that the defendant Newman Architects, LLC, was negligent in four ways: (1) failing to "follow the appropriate standard of care in inspecting existing field welds in areas affected by the renovation"; (2) failing to "follow the appropriate professional standard of care in supervising, as an architect, consultants and subcontractors in making inspections of the existing field welds"; (3) failing to "follow the appropriate professional standard of care in ensuring that existing elements within the high school were brought into compliance with the State Building Code"; and (4) giving "advice below the appropriate professional standard of care to the plaintiff, to whom it had a duty, in advising the renovation project would provide another twenty years of life to the high school, as required by and in accordance with State guidelines and definitions for renovation status and then failing to adequately monitor the project to ensure the structure and renovations satisfied that standard."[3]

In their answer, the defendants asserted a special defense alleging that the plaintiff's action was barred by § 52-584a because the plaintiff had commenced its action more than seven years after substantial completion of the subject improvement.[4] On January 12, 2016, the defendants filed a motion to bifurcate the trial, seeking to have the issue of whether the plaintiff's claims were barred by the statute of limitations heard before the issue of liability. The plaintiff objected on the basis that the statute of limitations issue was "too closely intertwined with the plaintiff's liability case." After oral argument on January 20, 2016, the court, *Elgo, J.*, granted the defendants' motion to bifurcate.

On February 1, 2016, the plaintiff filed a motion in limine to preclude evidence regarding the substantial completion date of the renovation project. In its motion, the plaintiff described the defendants' obligations under each of the two contracts. Under the contract for the report project, the "defendants agreed to provide a report outlining the scope of renovations needed to bring the [school] building and site to a 'comparable-to-new' standard . . . ." Under the contract for the renovation project, the "defendants agreed to provide the design, and design documents, and administer the underlying construction contracts on the [plaintiff's] behalf." The plaintiff argued that because it was "not asserting that defendants breached any duties arising out of that second, distinct, contract," any evidence regarding the date on which the renovation project was substantially complete was irrelevant to the issue of whether the plaintiff's claims arising from the report project were timely.

The defendants filed a motion in response, arguing that if evidence of the date of substantial completion

of the renovation project was precluded, there would be no factual issue left to be tried during the first phase of trial. According to the defendants, there were "no factual issues in dispute with respect to the completion date of the report project." The defendants requested that the court dispense with the jury and permit the parties to brief the only remaining issue, which would be the legal question of whether the defendants owed the plaintiff "a continuing duty with respect to the report project after the [report] was submitted and the referendum was passed." The parties appeared before Judge Elgo on February 2, 2016, to argue several motions in limine, including the defendants' motion to dispense with the jury. During this hearing, the plaintiff clarified that it was not asserting that the defendants had a continuing duty to correct any alleged mistakes in the report but rather that the comparable-to-new analysis was never substantially completed. The court prohibited any argument to the jury that substantial completion had never occurred, ruling that the question for the jury was when, not whether, substantial completion occurred. The court further prohibited the plaintiff from arguing to the jury that the date the certificate of occupancy was issued for the school could be the date of substantial completion, after concluding that there was no basis in law for the statute of limitations to be triggered by that date.

The next morning, the parties again appeared before the court. The jury was sworn in and counsel presented opening statements. During the plaintiff's opening statement, counsel indicated an intention to offer evidence in support of legal theories that the court already had ruled irrelevant and inadmissible, and the court sustained five objections on the basis of relevance before excusing the jury. The court thereafter reconsidered the defendants' earlier motion to dispense with the jury and ordered the defendants to "provide this court with affidavits and/or other admissible evidence in support of its claims . . . . [T]he plaintiff shall respond by specifically addressing each of the factual claims raised and assert whether each fact is or is not disputed. If disputed, the plaintiff shall file with its response evidence, which would be admissible at trial, sufficient to create an issue of fact which must be resolved by a jury." The court ordered the parties to brief the factual issues and submit "admissible evidence akin to a motion for summary judgment." The plaintiff objected to the court's proposed procedure.

On February 4, 2016, the defendants filed an offer of proof, setting forth the dates on which (1) the first contract was signed; (2) the report was prepared and submitted to the plaintiff; (3) the report was used by the plaintiff in its application for funding; (4) the referendum on the project was approved; and (5) the final invoice under the first contract was submitted and paid in full by the plaintiff. The defendants attached to their

offer of proof documents in support of those dates and the affidavits of Richard Munday, an employee of Newman Architects, and Francis, who was president of BJFW during the relevant time frame. The plaintiff responded that the defendants had failed to offer adequate proof, in that they were required, and failed, to present evidence that either: "(1) the last day on which they could have been negligent was more than seven . . . years before the commencement of this action; or (2) the date of substantial completion of an improvement to real property occurred more than seven . . . years before the commencement of this action." The plaintiff cited testimony and documentary evidence in support of its claim that there was an issue of fact as to whether the defendants had finished their work as of February 9, 1999, the date of the referendum. Specifically, the plaintiff relied upon language found in the report stating that "[e]xamination of structural elements concealed by finish materials was not made and will need thorough examination during the design and construction phases of the project." The plaintiff also pointed to letters prepared by Raso and Francis after the report had been provided to the plaintiff offering their opinions regarding the structure at the school, which the plaintiff claimed evidenced work performed after the date of the referendum. The plaintiff further noted communications in which Francis indicated he was missing certain original structural drawings, one of which Francis described as especially important to have.

On June 20, 2016, the court rendered judgment as a matter of law in favor of the defendants on their statute of limitations special defense. The court relied upon the undisputed facts that the defendants completed and submitted the report on June 16, 1998, and that the town used the report on June 25, 1998, when it submitted the report as part of its application for state funding. Noting the plaintiff's argument that the defendants had sent letters confirming their opinions as late as February 15, 2000, the court concluded that even if a jury were to credit that date, the action was still commenced well beyond seven years later. Thus, the court concluded that the defendants had satisfied their burden of showing the absence of any genuine issue of material fact and that they were entitled to judgment as a matter of law.[5] The plaintiff appealed.

On appeal, the plaintiff claims that the court improperly discharged the jury and rendered judgment as a matter of law because the defendants failed to satisfy their burden to demonstrate that the action was commenced outside the seven year statutory limitation period. Specifically, the plaintiff claims that its allegations "le[ft] open a wide range of possible dates of negligence," and that it offered documentary evidence and deposition testimony that supported the possibility that further work was performed after "the dates on

which the defendants' entire argument hinged." The defendants argue that the court properly rendered judgment because there were no material issues of fact to be tried and the evidence proved that the plaintiff's claims were time barred as a matter of law. We agree with the defendants.

At the outset, we note that the plaintiff expressly declined to pursue a theory that the defendants breached any obligations with respect to the renovation project under the second contract. As framed by the parties, the sole question on appeal is whether the trial court properly concluded that the defendants satisfied their burden of demonstrating that there was no genuine issue of material fact that the plaintiff failed to commence the action within seven years of the date of the alleged negligence arising out of the defendants' work on the report project.

We first set forth our standard of review. Whether a plaintiff's claim is barred by the applicable statute of limitation presents a question of law to which this court affords plenary review. *Sinotte* v. *Waterbury*, 121 Conn. App. 420, 440, 995 A.2d 131, cert. denied, 297 Conn. 921, 996 A.2d 1192 (2010); see also *Doe* v. *Boy Scouts of America Corp.*, 323 Conn. 303, 341, 147 A.3d 104 (2016). The court's decision on reconsideration of the defendants' motion to decide questions of law and to dispense with the jury trial is reviewed under the same standard as a decision on a motion for summary judgment. See *Thomson* v. *Dept. Social Services*, 176 Conn. App. 122, 127–28, 169 A.3d 256 (test for summary judgment is whether moving party would be entitled to directed verdict on same facts), cert. denied, 327 Conn. 962, 172 A.3d 800 (2017). "Summary judgment may be granted where the claim is barred by the statute of limitations. . . . Summary judgment is appropriate on statute of limitations grounds when the material facts concerning the statute of limitations [are] not in dispute . . . ." (Citation omitted; internal quotation marks omitted.) *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 313, 77 A.3d 726 (2013). "A material fact . . . [is] a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co.*, *LLC*, 312 Conn. 286, 310, 94 A.3d 553 (2014).

We next set forth the applicable statute of limitations, which provides in relevant part: "No action . . . whether in contract, in tort, or otherwise, (1) to recover damages (A) for any deficiency in the design, planning, contract administration, supervision, observation of construction or construction of, or land surveying in connection with, an improvement to real property . . . shall be brought against any architect, professional engineer or land surveyor performing or furnishing the design, planning, supervision, observation of construction or construction of, or land surveying in connection

with, such improvement more than seven years after substantial completion of such improvement." General Statutes § 52-584a (a). Subsection (c) of § 52-584a further provides: "For purposes of subsections (a) and (b) of this section, an improvement to real property shall be considered substantially complete when (1) it is first used by the owner or tenant thereof or (2) it is first available for use after having been completed in accordance with the contract or agreement covering the improvement, including any agreed changes to the contract or agreement, whichever occurs first."

By the plain terms of § 52-584a, an action against an architect or engineer arising out of a deficiency in one or more of the enumerated services must be brought within seven years after the substantial completion of the improvement to real property, with the date of substantial completion being the date the improvement is either first used or first available for use. Our Supreme Court has previously defined the term "improvement to real property" as "an alteration or development of the property in order to enhance or promote its use for a particular purpose" and has noted that the phrase in this context "ordinarily requires some physical addition to or alteration of the property in question . . . ." *Grigerik* v. *Sharpe*, 247 Conn. 293, 307, 721 A.2d 526 (1998).

Recognizing that the plaintiff had limited its claims to alleged negligence arising out of the report project, which did not itself require or effect a physical alteration of real property, the court noted that there was no readily discernible date of "substantial completion of an improvement to real property" and turned for guidance to our Supreme Court's application of the statute in a case in which a physical improvement was planned but did not occur because of the alleged negligence. In *Grigerik* v. *Sharpe*, supra, 247 Conn. 293, the plaintiff brought a negligence action against engineers who had performed professional services at his property. Specifically, the defendants were hired "to prepare a site plan, to design a subsurface sanitary sewage disposal system and to perform the necessary soil testing." (Internal quotation marks omitted.) Id., 299. The defendants were told that the site plan was necessary in order to obtain approval of the land as a building lot. Id. The defendants completed their work on the site plan on October 16, 1985. Id., 300. A few months later, the plaintiff applied for the permits to begin construction of a house on the lot, and the application was denied. After performing additional tests, "it was concluded that a curtain drain would have to be installed on the land in order to control the seasonally high groundwater." (Internal quotation marks omitted.) Id. Ultimately, however, after the construction of the curtain drain, the state department of health concluded that "the tests indicated that minimum public health standards for a septic system could not be met and that the building permits could not be issued." (Internal

quotation marks omitted.) Id. The jury found for the plaintiff on his negligence claim.

On appeal, this court concluded that a plan or design for a structure was not an "improvement" within the meaning of § 52-584a and held that the two year statute of limitations contained in General Statutes § 52-584 barred the plaintiff's negligence claim. Id., 297. Our Supreme Court reversed, holding that § 52-584a applies "where an improvement is planned but never effectuated." Id., 308. Having concluded that the seven year statutory limitation period applied, the court stated that "the negligence occurred during October, 1985," which was the date upon which the defendants completed the allegedly defective design, and the plaintiff had commenced its action fewer than seven years later. Id., 309. In essence, the court in *Grigerik* identified the date of negligence as the completion of the allegedly defective design, and thus, that was the date on which the seven year period began to run.

We conclude that the trial court properly determined, using *Grigerik* as guidance, that the defendants satisfied their burden of proving that there was no genuine issue of material fact that the plaintiff commenced its action outside the statutory limitation period.[6] The plaintiff acknowledged to the trial court that the report was "the end product of defendants' work on the report project." With respect to that project, the defendants set forth the following undisputed dates: (1) the first contract was signed on April 20, 1998, (2) the report was dated June 16, 1998, (3) the report was submitted to the plaintiff on that same day, (4) the report was used by the plaintiff as part of its application for state funding on June 25, 1998, (5) the referendum on the renovation project was approved on February 9, 1999, and (6) the defendants' final invoice for the report project was sent to the plaintiff on February 23, 1999 and paid on April 13, 1999. The defendants also presented the affidavits of Francis and Newman, who averred that the defendants performed no work on the report project after the February 9, 1999 referendum.[7] In June, 1999, the parties entered into a separate, second contract for the design and construction of the renovation project, providing the trial court with additional evidence that the report project had been completed.

The defendants' evidence, which demonstrated that the defendants had completed work on the report project in 1999, and therefore any alleged negligence with respect to the report project had occurred by that date, was sufficient to prove the absence of a genuine issue of material fact that the action, served on July 14, 2011, was commenced well outside the seven year statutory limitation period.[8] Accordingly, the burden shifted to the plaintiff: "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judg-

ment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) *Rosenfield* v. *I. David Marder & Associates, LLC*, 110 Conn. App. 679, 684, 956 A.2d 581 (2008).

The plaintiff does not claim that the statute of limitations was waived or tolled on the basis of a continuing course of conduct. Instead, it suggests that it was a question for the jury "[w]hether the defendants substantially completed their report even though they failed to inform the [plaintiff] about [the] defect [in the auditorium roof]." The trial court properly rejected this contention as inconsistent with the language and purpose of the statute. See *Grigerik* v. *Sharpe*, supra, 247 Conn. 303 n.10 (noting this court's recognition that "at the time the original version of § 52-584a was enacted, two changes recently had altered modern tort law: the fall of the privity requirement; and the death of the completed and accepted rule, [under which] the liability of a design professional or builder terminated when the improvement was finished and accepted by the owner" and that "the legislature's concern over this increasing liability facing architects and professional engineers . . . had prompted the legislature to enact § 52-584a" [citation omitted; internal quotation marks omitted]); see also *Bagg* v. *Thompson*, Superior Court, judicial district of Hartford, Complex Litigation Docket, Docket No. X07-CV-04-4025177-S, (April 17, 2008) (*Berger, J.*) (45 Conn. L. Rptr. 448, 452 n.9) (noting that § 52-584a was enacted to end perpetual liability).[9]

The plaintiff challenges Francis' and Newman's averments that the defendants performed no work on the report project after the referendum held on February 9, 1999.[10] In support of its claims, the plaintiff submitted, inter alia, a February 17, 1999 memorandum written by Francis explaining why BJFW could not provide structural engineering services for the school at a fee of less than $97,500. The memorandum identified work that had yet to be performed, including a structural evaluation of the roof framing system, which was required by the "comparable to new" criteria. The plaintiff's supporting documents also included communications dated April 20, 1998, and March 24, 1999, which indicated that Francis was missing the original structural drawings showing the foundation and roof framing of the auditorium. The plaintiff also presented letters written by Francis to the state on July 1, 1999, and February 15, 2000, which affirmed the conclusions made in the report, and a similar letter written by Raso and dated June 30, 1999.

The plaintiff claims that its evidence impeached the testimony of Munday and Francis, and argues that if the jury disbelieved them as to when they stopped working on the report project, "it might have found the defen-

dants' entire defense wanting." We disagree. The evidence, viewed in the light most favorable to the plaintiff, did not demonstrate the existence of a genuine issue of material fact as to whether the action was commenced within seven years of the alleged negligence. As the court found, the last date upon which a jury could find that the defendants were still working on the report project was February 15, 2000, the date of the last letter provided by the plaintiff in which Francis affirmed the conclusions made in the report. The plaintiff presented no evidence of alleged negligence with respect to the report project beyond that date. Accordingly, we agree with the trial court that the statute of limitations began to run, at the latest, on February 15, 2000. See *Rosenfield* v. *I. David Marder & Associates, LLC*, supra, 110 Conn. App. 687 (concluding that any alleged breach occurred at latest by April 12, 2000, and explaining that court "need not determine, for purposes of this appeal, whether the statute of limitations began to run on November 9, 1999, or April 12, 2000").

The plaintiff does not dispute that the applicable limitation period under § 52-584a is seven years. Thus, the plaintiff was required to commence this action by February 15, 2007. The plaintiff acknowledges that the summons and complaint in this action were not served until July 14, 2011. Because it failed to commence this action within the seven year limitation period, the court correctly concluded that the plaintiff's claims are barred by § 52-584a.[11]

We conclude that the defendants established the lack of a genuine issue of material fact concerning the statute of limitations. The plaintiff failed to present evidence that would raise such an issue. Accordingly, the court properly rendered judgment as a matter of law in favor of the defendants on their statute of limitations defense.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Charles V. Francis also was a defendant in this action, but was defaulted for failure to plead. A complaint and an apportionment complaint were filed against O & G Industries, Inc., but were subsequently withdrawn. The plaintiff also filed a complaint against Loureiro Engineering Associates, but the action was withdrawn as to it on September 8, 2016. Francis, O & G Industries, Inc., and Loureiro Engineering Associates are not participants in this appeal. We refer to Newman, Raso, and Newman Architects, LLC, as the defendants.

[2] As noted by the trial court: P.A. 96-270, codified at General Statutes § 10-282 (18), "created a new category of school construction project known as 'renovation,'" which was "a school building project to totally refurbish an existing building as an alternative to new construction and which results in the renovated facility taking on a useful life comparable to that of a new facility."

[3] The plaintiff made the same allegations against Raso and Newman, except that it did not allege that they failed to follow the standard of care in supervising consultants and subcontractors.

[4] On February 6, 2015, the defendants filed a motion for summary judgment on their special defense, which the court, *Sheridan, J.*, denied on the basis that "genuine issues of material fact exist as to the date of substantial completion."

[5] The court also rejected the plaintiff's argument that the doctrine of

nullum tempus applied to save its action and declined the plaintiff's attempt, on the eve of trial, to assert the doctrine of equitable estoppel. These rulings are not challenged on appeal.

[6] To the extent that the plaintiff claims that "the defendants had the burden to prove the date of their negligence" rather than the last date on which they could have been negligent, we reject this argument. The defendants need only "demonstrat[e] that the action had commenced outside of the statutory limitation period"; *Romprey* v. *Safeco Ins. Co. of America*, supra, 310 Conn. 321; which can be proven by evidence that the plaintiff commenced the action more than seven years after the last date on which the defendants could have been negligent. See *Rosenfield* v. *I. David Marder & Associates, LLC*, 110 Conn. App. 679, 692, 956 A.2d 581 (2008) (declining to decide on which specific date statute began to run and concluding that it began to run "no later than April 12, 2000").

[7] The defendants provided the affidavit of Richard Munday, an employee of Newman Architects, LLC, and attached: (1) a copy of the first contract dated April 20, 1998, (2) a copy of the report dated June 16, 1998, (3) a certified copy of the Town of Windsor Public Building Commission meeting minutes dated June 25, 1998, and indicating that the town had submitted the report to the state on June 25, 1998, (4) a certified copy of the Windsor Town Council meeting minutes dated February 16, 1999, and indicating that the school renovation project had been approved by referendum on February 9, 1999, and (5) a copy of Newman Architects' accounts receivable ledger showing that it had been paid in full under the first contract by April 13, 1999.

[8] The plaintiff relies on *Rickel* v. *Komaromi*, 144 Conn. App. 775, 73 A.3d 851 (2013), and *Fradianni* v. *Protective Life Ins. Co.*, 145 Conn. App. 90, 73 A.3d 896, cert. denied, 310 Conn. 934, 79 A.3d 888 (2013), in support of its claim that the trial court improperly adopted the defendants' "mechanical application" of the statute. Both cases are inapposite, as the plaintiff in *Rickel* alleged continuing torts and the plaintiff in *Fradianni* alleged conduct that could constitute separate, annual breaches of the contract occurring within the limitation period.

In *Rickel*, the plaintiff had "alleged facts in her complaint to support her claims that the defendants' conduct in planting [invasive] bamboo and then failing to control its growth resulted in a continuing nuisance and a continuing trespass." *Rickel* v. *Komaromi*, supra, 144 Conn. App. 789–90. The trial court relied only upon the date the bamboo was planted in rendering summary judgment for the defendants on the ground that the action was barred by the statute of limitations. Id., 792. This court concluded that the court erred in rendering judgment because the "continuing underground and above ground activity on the plaintiff's property" created a genuine issue of fact as to whether the statute of limitations barred all of the plaintiff's claims. Id., 790.

In *Fradianni*, this court concluded that the trial court improperly rendered summary judgment in favor of the defendant insurer where the plaintiff had alleged that "each year the defendant charged him for a cost of insurance that was in excess of the maximum amount allowed under the terms of the contract and then deducted that excessive amount from the policy's accumulated cash value." *Fradianni* v. *Protective Life Ins. Co.*, supra, 145 Conn. App. 103. This court concluded that such claims alleged "separate breaches by the defendant, several of which occurred within the statute of limitations period." Id.

[9] This court, in *R.A. Civitello Co.* v. *New Haven*, 6 Conn. App. 212, 227, 504 A.2d 542 (1986), concluded that General Statutes (Rev. to 2005) § 52-584a was solely a statute of repose. In 1986, the legislature amended § 52-584a to remove the language relied upon by this court in *R.A. Civitello Co.* "[T]he language and the legislative history of [the 1986 amendments to § 52-584a] indicate the legislature's intent to overturn *R.A. Civitello Co.* and to provide a seven year statute of limitations for certain actions against architects and engineers, rather than a two year statute of limitations coupled with a seven year statute of repose." *Grigerik* v. *Sharpe*, supra, 247 Conn. 304.

[10] Attached to the plaintiff's memorandum in support were the following documents: (1) a document entitled "Guidelines for Determining Eligibility of School Construction Projects for Status as Renovations as Defined in P.A. 96-270," (2) excerpts from the deposition of Joseph A. Novak, Jr., (3) a copy of the report, (4) letters from Francis to the state, dated July 1, 1999, and February 15, 2000, stating in part that "it is our professional opinion that the proposed renovations will not compromise the structural integrity of the original building and that it is adequate to provide for continued occupancy for a period of time comparable to that of a new facility," (5)

letters from Raso to the Windsor Public Schools and the state dated June 28, 1999, and June 30, 1999, stating in part "that the entire facility will be in compliance with all applicable codes, and shall have a useful life comparable to that of a new facility following the construction budget," (6) a Power-Point presentation dated September 28, 1998, stating that the "basic building structure, walls, floors and roof are sound and in good condition," (7) the certificate of occupancy for the school issued December 21, 2004, (8) excerpts from the deposition of Raso, (9) excerpts from the deposition of Francis in which he testified that during "design and construction" he "went back and took another look at" exposed structural elements that had previously been concealed, (10) fax memos from Francis to Munday dated April 20, 1998, February 17, 1999, and March 24, 1999, in which Francis noted he was missing certain original structural drawings, one of which "especially will be important to have," and (11) excerpts from the deposition of Munday in which he testified that he did not know "what other steps were taken" regarding evaluation of the auditorium roof structure after the report project and that he could not recall what steps, if any, he took to locate the missing drawing.

[11] In its brief, the plaintiff makes two allegations of negligence that it contends occurred during the renovation project but "implicated the defendants' obligations under the first contract." Specifically, the plaintiff alleged that the defendants negligently "failed to follow the appropriate standard of care in ensuring that existing elements within the high school were brought into compliance with the State Building Code"; and "gave advice below the appropriate professional standard of care to the [plaintiff], to whom it had a duty, in advising the renovation project would provide another twenty years of life to the high school . . . and then failing to adequately monitor the project to ensure the structure and renovations satisfied this standard." In light of when the report project concluded, i.e., no later than 2000, the defendants' responsibilities under that project ended well before July 14, 2004, which date marks seven years prior to the commencement of this litigation.

————————————————