******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

REVERSE MORTGAGE SOLUTIONS, INC. *v.*
WIDOW(ER), HEIR(S) AND/OR
CREDITORS OF THE ESTATE
OF BERYL E. ROWLAND
ET AL.
(AC 47141)

Bright, C. J., and Moll and Seeley, Js.*

*Syllabus*

The defendants A and T, the sole heirs of the estate of their grandmother, the decedent, appealed from the trial court's judgment denying their motion to open the judgment of foreclosure by sale rendered for the plaintiff on certain real property owned by the decedent. The defendants claimed that the trial court abused its discretion by denying their motion to open without holding a hearing. *Held*:

The defendants had standing to appeal to this court from the trial court's denial of their motion to open, as, although they were not named individually in the foreclosure action, the plaintiff designated the heirs of the decedent as party defendants to the foreclosure action and, therefore, the defendants were parties to the underlying action pursuant to statute (§ 52-69).

The trial court did not abuse its discretion by denying the motion to open without holding a hearing, the defendants having failed to assert that a good defense existed at the time the judgment of foreclosure by sale was rendered as required by statute (§ 52-212) and failed to comply with the mandate of § 52-212 (c) that the motion to open be verified by the oath of the complainant or the complainant's attorney.

Argued November 18, 2024—officially released April 1, 2025

*Procedural History*

Action to foreclose a mortgage on certain real property, and for other relief, brought to the Superior Court in the judicial district of Danbury, where the named defendant et al. were defaulted for failure to appear; thereafter, Mortgage Assets Management, LLC, was substituted as the party plaintiff; subsequently, the court, *Shaban, J.*, granted the plaintiff's motion for a judgment of foreclosure by sale and rendered judgment thereon;

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

thereafter, the court, *Fox, J.*, denied the motion to open filed by the defendant Trinity Tatiana Pylypczuk et al., from which the defendant Trinity Tatiana Pylypczuk et al. appealed to this court. *Affirmed.*

*Jonathan W. Fazzino*, with whom were *Patricia C. Sullivan* and, on the brief, *Alexander Copp*, for the appellants (defendant Trinity Tatiana Pylypczuk et al.).

*Benjamin Staskiewicz*, with whom, on the brief, was *Geoffrey K. Milne*, for the appellee (substitute plaintiff).

*Opinion*

BRIGHT, C. J. In this action to foreclose a reverse mortgage on real property owned by Beryl E. Rowland (decedent), Trinity Tatiana Pylypczuk and Andrew Bryce Pylypczuk (heirs), who are the decedent's grandchildren, appeal from the judgment of the trial court denying their motion to open the judgment of foreclosure by sale rendered by the court in favor of the plaintiff, Mortgage Assets Management, LLC, formerly known as Reverse Mortgage Solutions, Inc.[1] On appeal, the heirs claim that the court abused its discretion by denying their motion to open without a hearing. We disagree and, accordingly, affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On March 11, 2015, the decedent executed a home equity conversion note and mortgage, granting the plaintiff a mortgage on her property located at 211 Long Ridge Road in Danbury (property) to secure future advances on a loan not to exceed $367,500. Pursuant to the note and mortgage, the decedent's death was

---

[1] The original plaintiff, Reverse Mortgage Solutions, Inc., merged with and into Mortgage Assets Management, LLC, on December 31, 2021. The court subsequently granted a motion to substitute "Mortgage Assets Management, LLC f/k/a Reverse Mortgage Solutions, Inc.," as the plaintiff in November, 2022. In the interest of simplicity, we refer to both entities as the plaintiff in this opinion.

the maturity event that allowed the plaintiff to demand immediate payment of all outstanding principal and interest due under the loan. After the decedent died on December 20, 2020, the plaintiff, pursuant to the terms of the note, accelerated payment of the debt and commenced the underlying foreclosure action in October, 2021. The plaintiff named as defendants "the widow(er), heir(s), and/or creditors of the Estate of Beryl E. Rowland" (unknown defendants) and Andrew Pylypczuk (Andrew), the decedent's son and the father of the heirs.[2] In the two count complaint, the plaintiff sought foreclosure of the mortgage on the property (count one) and reformation of the mortgage to correct an error in the property description (count two). The plaintiff alleged that, as of August 26, 2021, the amount due and owing on the note was $50,921.19, plus interest, fees, and collection costs.

Appended to the summons was a "first order of notice in foreclosure action" form, which reflected that the court had found that the addresses of the unknown defendants were unknown and had ordered the plaintiff to provide notice by publication on the Judicial Branch legal notices website for fourteen days, beginning on or before November 2, 2021. The state marshal's return of service provided that, on October 22, 2021, the marshal served (1) the unknown defendants by online publication in accordance with the court's order of notice and (2) Andrew by leaving a true and attested copy of the writ of summons and complaint with the Secretary of the State and by sending a copy thereof, by certified mail, return receipt requested, to a residential address in Baltimore, Maryland. See General Statutes § 52-69

---

[2] The plaintiff also named the following additional defendants: the Secretary of Housing and Urban Development; the State of Connecticut, Department of Revenue Services; and the State of Connecticut, Judicial Branch. These additional defendants were defaulted for failing to appear, and they are not involved in this appeal.

(notice to creditors, widow or widower, and heirs of deceased person); General Statutes § 52-68 (notice to nonresident interested parties); see also General Statutes § 52-59b (c) ("any process in any civil action brought against the nonresident individual . . . may be served upon the Secretary of the State and shall have the same validity as if served upon the nonresident individual . . . personally").

On June 28, 2022, the plaintiff filed an affidavit of online publication of legal notice and a motion for a finding that no further notice was required as to the unknown defendants. In that motion, the plaintiff's counsel represented that the plaintiff had provided notice of the action by publication on the Judicial Branch website from October 22 through November 5, 2021, pursuant to the court's order of notice. The court, *Shaban, J.*, granted the motion on July 11, 2022. On July 26, 2022, the plaintiff filed a supplemental marshal's return of service dated December 15, 2021, which provided that the certified letter she had sent to Andrew in Baltimore had been returned to the marshal by the postal service and had been marked as " 'Unable to Forward/For Review' and 'Return to Sender, Not Deliverable as Addressed, Unable to Forward.' " On August 31, 2022, the court granted the plaintiff's motions for default for failure to appear against the unknown defendants and Andrew.[3]

On February 3, 2023, the plaintiff filed a motion for judgment of strict foreclosure and a finding of entitlement of possession, requesting that the court reform the mortgage to incorporate the correct description of the property and make a finding that the plaintiff is entitled to possession of the property. The plaintiff later

---

[3] In its orders, the court stated that, if any of the specifically named defendants—but not the unknown defendants—filed an appearance before judgment was entered, then the default would be automatically set aside.

filed appraisals,[4] foreclosure worksheets, and the required foreclosure affidavits. On April 19, 2023, the plaintiff filed the operative amended complaint, which did not alter the substance of the original complaint.[5] On July 24, 2023, after reviewing the updated affidavit of debt filed on July 21, 2023, the court, *Shaban, J.*, rendered a judgment of foreclosure by sale. The court (1) found that the outstanding debt, including attorney's fees, was $82,668.91 and that the fair market value of the property was $393,000; (2) appointed a foreclosure committee (committee); (3) set a sale date for November 11, 2023; and (4) ordered that notice of the sale be published in the Danbury News Times on November 3 and 10, 2023. On August 9, 2023, the plaintiff filed a notice of entry of judgment of foreclosure by sale, notifying all nonappearing defendants of the judgment and scheduled sale of the property.

On November 8, 2023, three days before the sale, the heirs appeared through counsel and filed a "motion to open and vacate judgment or, in the alternative, open and extend sale date" (motion to open) and a caseflow request for "an emergency hearing" on their motion to open before the sale date. In their motion to open, they represented that the decedent's only child, Andrew, "died in the state of Maryland in 2021, on information and belief prior to the institution of this action," leaving the heirs as the sole living heirs of the decedent. They also represented that they did not receive notice of the foreclosure action until November 6, 2023. They stated that, "[b]ecause the only named defendant ([Andrew]) in this action is deceased, and the [heirs] only recently received notice of it, the [heirs] request that the court

---

[4] The plaintiff filed an appraisal on February 3, 2023, which valued the property at $385,000 as of January 6, 2023, and it filed a second appraisal on June 30, 2023, which valued the property at $393,000 as of June 1, 2023.

[5] The complaint was amended to allege that Reverse Mortgage Solutions, Inc., merged with and into Mortgage Assets Management, LLC, on December 31, 2021. See footnote 1 of this opinion.

open and vacate the judgment, or, in the alternative, open and extend the sale day for a period of four months so that the [heirs] can arrange for a private sale of the [property] or payment of the subject mortgage. . . . Because there is significant equity in the [property], the plaintiff will not be prejudiced by the granting of this motion." The heirs also filed a motion to intervene as defendants and a suggestion of death as to Andrew, representing that they are the natural children of Andrew and thus the sole living heirs of the decedent.

On November 9, 2023, the plaintiff filed an objection to the heirs' motion to open and request for a hearing, arguing that, "[e]ven if the sale occurs, the motion [could] be heard after the sale, since the defendant's right to redeem would only be foreclosed out by the approval of the sale, not the occurrence of the sale itself." It further argued that the heirs failed to show good cause to open the judgment and that "allowing the sale to proceed (especially [when] the vast majority of the costs for [the sale had] been incurred) would be equitable as it may give the court and the parties more information to ensure a correct resolution, while canceling the sale would have the opposite effect—nullifying those expenses and efforts for a potential benefit that [may] not be achieved based on information not currently known."

That same day, the court, *Fox, J.*, without a hearing, denied the motion to open and declined to extend the sale date. The court further ordered that "the committee may conduct the sale, but any motion to approve the sale [must] not be filed until after the expiration of the appeal period . . . ." A third party was the successful bidder at the ensuing foreclosure sale on November 11, 2023, and the heirs filed the present appeal on November 28, 2023.

On February 23, 2024, the plaintiff filed a motion to terminate the appellate stay pursuant to Practice Book

§ 61-11 (e), arguing that the appeal was taken solely for the purpose of delay and that the due administration of justice required that the stay be terminated. It argued that it is unlikely that the heirs would prevail on appeal because they failed to "present [any] cause to open the judgment" and because it appeared that the heirs lacked standing to appeal because the court did not rule on their motion to intervene. The heirs filed an opposition to the motion to terminate stay on March 6, 2024, representing that the decedent "executed a 2014 will . . . leaving the residue of her estate to Andrew (75 percent) and [the heirs] (25 percent)." They argued that the foreclosure action was void ab initio as brought against a deceased person because Andrew had died before this action was commenced. The Office of the Appellate Clerk forwarded the motion and opposition to the trial court, and the court held a hearing on the motion on March 11, 2024. At the hearing, the heirs submitted a copy of a death certificate for Andrew, which provided that he died on November 24, 2021, in Baltimore, Maryland. On April 2, 2024, the court granted the motion to terminate stay, and the heirs subsequently filed a motion for review of that decision with this court.

While the motion for review was pending before this court, the plaintiff filed a motion to dismiss the heirs' appeal, arguing that they lack standing to appeal. The heirs filed an opposition to the motion to dismiss, claiming that, as the decedent's heirs, they have standing pursuant to § 52-69. On July 10, 2024, this court granted the motion for review, vacated the order terminating the appellate stay, and ordered that any proceeding on the confirmation of the sale be stayed pending final disposition of the heirs' appeal. On that same date, we denied the plaintiff's motion to dismiss without prejudice to the panel considering the merits of the appeal determining the issue of standing. We also ordered, sua sponte, that the parties file supplemental memoranda

addressing whether the heirs are parties to the underlying action pursuant to § 52-69. The parties filed their supplemental memoranda on July 31, 2024.

I

We begin, as we must, with the threshold issue of whether the heirs are parties to the underlying action pursuant to § 52-69. See *M.U.N. Capital, LLC* v. *National Hall Properties, LLC*, 163 Conn. App. 372, 374, 136 A.3d 665 (whether appellant is proper party to appeal is "threshold inquiry" that implicates this court's subject matter jurisdiction (internal quotation marks omitted)), cert. denied, 321 Conn. 902, 136 A.3d 1272 (2016).

Appellate jurisdiction is governed by General Statutes § 52-263, which provides in relevant part that, "if *either party* is aggrieved by the decision of the court . . . he may appeal to the court having jurisdiction from the final judgment of the court . . . ." (Emphasis added.) The statute thus requires an appellant to establish that "(1) [the appellant] was a party to the underlying action; (2) [the appellant] was aggrieved by the trial court decision; and (3) the appeal is from a final judgment." *State* v. *Salmon*, 250 Conn. 147, 163, 735 A.2d 333 (1999). In the present case, we are concerned only with the first requirement, as there is no dispute that the denial of the motion to open is a final judgment and that the heirs are aggrieved by that decision. See, e.g., *Finance of America Reverse, LLC* v. *Henry*, 222 Conn. App. 810, 820, 307 A.3d 300 (2023) ("the denial of a motion to open a judgment of foreclosure by sale is also an appealable final judgment").

Our Supreme Court has "interpreted the party requirement of § 52-263 . . . to mean a party to the underlying action. . . . Ordinarily, the word party has a technical legal meaning, referring to those by or against whom a legal suit is brought . . . the party

plaintiff or defendant, whether composed of one or more individuals and whether natural or legal persons. . . . This definition of party . . . includes only those who are parties to the underlying action." (Citations omitted; internal quotation marks omitted.) *State* v. *Salmon*, supra, 250 Conn. 153–54.

In its supplemental memorandum, the plaintiff claims that § 52-69 "is a notice statute and does not give rise to a right to appear through a class of individuals [who] may have an interest in the real property of the deceased. . . . The way to properly appear and defend [pursuant to the statute] is seeking to be made a party defendant through a motion to intervene or similar motion in which that party details their specific interest and the trial court accepts their appearance after granting their motion." In contrast, the heirs claim that, although they filed a motion to intervene "out of [an] abundance of caution, there was no need to seek court permission to intervene because the heirs of the [decedent's] estate were *already* parties to the action at the time [they] appeared." (Emphasis in original.) We agree with the heirs.

Whether the heirs are parties to the foreclosure action pursuant to § 52-69 raises an issue of statutory interpretation, which is a question of law subject to our plenary review. See *Civic Mind, LLC* v. *Hartford*, 229 Conn. App. 615, 637, 328 A.3d 225 (2024). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . It is a basic tenet of statutory

construction that [w]e construe a statute as a whole and read its subsections concurrently in order to reach a reasonable overall interpretation." (Internal quotation marks omitted.) Id., 637–38.

Our analysis begins with the text of § 52-69, which provides in relevant part: "[I]f an action for equitable relief is brought relating to any interest in real property belonging to or claimed by the widow, widower or heirs of any deceased person, and the plaintiff or his attorney attach to the complaint in the action an affidavit stating that the plaintiff does not know who the widow, widower or heirs, or some of them, are, or where they or any of them reside, and, in the process to the action, describes as parties defendant 'the widow and heirs', 'the widower and heirs' or 'the heirs', as the case may be, of the deceased person, without further describing the names or residences of any such parties whose names and residences may be unknown to him, the court to which the action is brought making 'representatives and creditors', 'the widow and heirs', 'the widower and heirs', or 'the heirs' parties defendant, or the clerk, assistant clerk or any judge thereof, may make such order relative to the notice to be given as the court, clerk, assistant clerk or judge deems reasonable. Notice having been given according to the order and duly proved, the court may proceed to a hearing of the action. Any executor or administrator who may be appointed or qualified pending such proceedings, or any other person claiming as creditor, widow, widower or heir of the deceased person, may appear and defend in the action. All creditors and representatives of the deceased person shall be forever concluded by the judgment or decree rendered in the action."[6]

---

[6] General Statutes § 47-33 (b), which also applies to actions to foreclose a mortgage on real estate after the mortgagor has died, provides in relevant part that "[t]he term 'heirs', as used in designating defendants pursuant to section 52-69, includes the heirs at law, legatees and devisees of the deceased, and all persons who might claim under them . . . ."

The meaning of § 52-69 is plain and unambiguous and does not yield absurd or unworkable results. The statute expressly provides that a plaintiff may designate "as *parties defendant* . . . 'the heirs' . . . of the deceased person" and that "any . . . person claiming as . . . heir of the deceased person, *may appear and defend in the action.*" (Emphasis added.) General Statutes § 52-69. The designation of such defendants in a foreclosure action is necessary because "title to real estate vests immediately at death in a deceased's heirs, or in devisees upon the admission of the will to probate. . . . The recording of a probate certificate of devise or descent is necessary only to perfect marketable title." (Citations omitted; internal quotation marks omitted.) *Santa Fuel, Inc.* v. *Varga*, 77 Conn. App. 474, 487, 823 A.2d 1249, cert. denied, 265 Conn. 907, 831 A.2d 251 (2003).

In the present case, in accordance with § 52-69, the plaintiff designated "the widow(er), heir(s), and/or creditors of the Estate of Beryl E. Rowland" as party defendants to the foreclosure action, and the heirs appeared, claiming to be among that class of unknown defendants by virtue of their status as the sole living heirs of the decedent.[7] Section 52-69 is clear that the heirs are parties to the underlying action, and recognizing those individuals against whom an action is brought as parties to that action does not lead to absurd or unworkable results. Indeed, this status is necessary because "[a]ll creditors and representatives of the deceased person shall be forever concluded by the judgment or decree rendered in the action." General Statutes § 52-69. Although the plaintiff suggests that a motion to intervene or a similar motion is required when a designated defendant seeks to appear and defend in an action pursuant to § 52-69, the plain statutory text

---

[7] Despite its position as to the heirs' standing under § 52-69, the plaintiff does not dispute the heirs' factual assertion that they are the sole living heirs of the decedent.

provides no support for such an interpretation.[8] Accordingly, we conclude that the heirs are parties to the underlying action pursuant to § 52-69 and that we therefore have jurisdiction over their appeal.

## II

As to the merits, the heirs claim that the court abused its discretion by denying their motion to open without a hearing. We disagree.

"The standard of review of [a denial of a motion to open] a judgment of foreclosure by sale . . . is whether the trial court abused its discretion. . . . A foreclosure action is an equitable proceeding. . . . The determination of what equity requires is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *Crossing Condominium Assn., Inc.* v. *Miller*, 228 Conn. App. 431, 439, 325 A.3d 326 (2024).

A motion to open a judgment upon default is governed by General Statutes § 52-212 and Practice Book § 17-43,[9] pursuant to which "the movant must make a two

---

[8] Notably, the trial court declined to act on the heirs' motion to intervene in the present case and denied—rather than dismissed—their motion to open, which indicates that the court considered the heirs to be parties to the underlying action.

[9] General Statutes § 52-212 provides in relevant part: "(a) Any judgment rendered or decree passed upon a default . . . may be set aside, within four months following the date on which the notice of judgment . . . was sent . . . upon the . . . written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment . . . and that the . . . defendant was prevented by mistake, accident or other reasonable cause from . . . making the defense. . . .

part showing that (1) a good defense existed at the time an adverse judgment was rendered; and (2) the defense was not at that time raised by reason of mistake, accident or other reasonable cause. . . . The party moving to open a default judgment must not only allege, but also make a showing sufficient to satisfy the two-pronged test [governing the opening of default judgments]. . . . [B]ecause the movant must satisfy both prongs of this analysis, failure to meet either prong is fatal to its motion." (Internal quotation marks omitted.) *Nationstar Mortgage, LLC* v. *Giacomi*, 226 Conn. App. 467, 479, 319 A.3d 794 (2024).

On appeal, the heirs argue that the motion to open "raised two main issues: the [heirs] did not have notice of the action and the judgment was potentially improper as to [Andrew], who passed away in 2021. . . . Both issues raised in the motion depended on disputed issues of fact requiring a trial-like hearing." As to their own lack of notice, the heirs argue that they would have presented "evidence that: (1) they received no actual notice of the action, (2) their identities and addresses were easily obtainable from public record[s] and they should not have been served via publication, and (3) [although] compliance with an order of notice is prima facie evidence that no further reason for delay exists, the presumption would have been rebutted, and the [heirs] should have been given the chance to argue for an extension of the sale date." (Footnote omitted.) As to the "potentially improper" service of process for Andrew, the heirs argue that they "would have presented evidence that the address at which service was sent . . . was not [Andrew's] usual place of abode, and

"(c) The . . . written motion shall be verified by the oath of the complainant or his attorney, shall state in general terms the nature of the . . . defense and shall particularly set forth the reason why the . . . defendant failed to appear. . . ."

Practice Book § 17-43 (a) mirrors § 52-212 and imposes the same requirements.

thus the action was not properly commenced prior to his death.''

The plaintiff responds that the heirs waived any claim as to improper service of process by filing an appearance without filing a timely motion to dismiss and that the motion to open failed to comply with § 52-212 because it failed to ''set forth a defense to the action, given that service of process was waived.'' In their reply brief, the heirs claim that they properly raised their lack of notice in the motion to open rather than in a motion to dismiss and that the plaintiff waived the heirs' alleged failure to comply with § 52-212 by not raising that argument in its objection to the motion to open. They argue that ''the fact that the [heirs] raised a jurisdictional claim implicates due process rights that are not subject to abatement by the procedural requirements in . . . § 52-212.'' We conclude that the court did not abuse its discretion by denying the motion to open.

As an initial matter, we reject the heirs' claim that the plaintiff waived its objection to their alleged failure to comply with § 52-212 by not raising that argument in its objection to the motion to open. In its objection, the plaintiff specifically argued that it objected ''to the substance of the motion because the [heirs'] motion does not present any cause to open the judgment. . . . While the motion represents that the [heirs] became aware of the action on November 6, 2023, such late realization does not present good cause to open the judgment.'' Thus, the plaintiff specifically referenced the good cause requirement set forth in § 52-212 (a) in its objection to the motion to open. The fact that the plaintiff did not expressly mention § 52-212 is of no moment in light of our standard of review, which requires that we ''make every reasonable presumption in favor of the correctness of [the court's] action.'' (Internal quotation marks omitted.) *Crossing Condominium Assn., Inc.* v. *Miller*, supra, 228 Conn. App.

439. Moreover, when, as in the present case, the trial court does not state the factual and legal basis for its decision, and the appellant fails to seek an articulation of that decision pursuant to Practice Book § 66-5, "we presume that the court applied the law correctly; we read the record with an eye to support rather than to undermine the [judgment]." *Stratford* v. *LeBlanc*, 175 Conn. App. 362, 367, 167 A.3d 1015 (2017); see also *Acadia Ins. Co.* v. *O'Reilly*, 138 Conn. App. 413, 419, 53 A.3d 1026 (2012) ("[a]bsent any indication of the factual and legal basis of the court's decision, we cannot conclude that the court abused its ample discretion in denying the defendants' motion to open the default judgment"), cert. denied, 308 Conn. 904, 61 A.3d 1097 (2013). Accordingly, because the heirs sought to open and vacate a judgment rendered upon a default, § 52-212 applies to their motion to open.

We also are not persuaded that the heirs raised a jurisdictional claim in their motion to open that would obviate the need to comply with the procedural requirements in § 52-212. In support of their argument to the contrary, the heirs cite *Weinstein & Wisser, P.C.* v. *Cornelius*, 151 Conn. App. 174, 94 A.3d 700 (2014), in which this court held that, "because the defendant's motion to open raised a jurisdictional claim, the court erred in analyzing it solely under § 52-212 (a) . . . ." Id., 181. The plaintiff's reliance on that case is misplaced, as it is readily distinguishable from the present matter.

In *Weinstein & Wisser, P.C.*, more than five years after the court rendered judgment for the plaintiff upon the defendant's default for failing to enter an appearance, the defendant filed a motion to dismiss for lack of personal jurisdiction due to insufficient service of process. Id., 176. "The defendant attached an affidavit to his motion in which he averred that he had not resided at . . . the address at which service had been made, at any time on or before the date of purported

service of process." Id. "[T]he defendant also filed a motion to open the default judgment 'on the ground that the court did not have jurisdiction over [the defendant] due to insufficiency of service of process (Practice Book § 10-31 [a] [5]) for the reasons articulated in his motion to dismiss.' " Id., 177. The trial court denied the motion to open on the ground that the defendant failed to show that a good defense existed at the time judgment was rendered, and it "denied the motion to dismiss, on the ground that the case would have to be opened before it could consider the motion to dismiss." Id., 177–78.

On appeal to this court, the defendant claimed that "the court erred in treating his motion to open as a standard motion to [open] and in analyzing his claim solely under § 52-212 (a) and Practice Book § 17-43 (a)" when he relied "on a common-law jurisdictional argument." (Internal quotation marks omitted.) Id., 179–80. This court agreed with the defendant and reversed the judgment of the trial court, reasoning that "a court always has the inherent authority to open a default judgment, irrespective of the four month rule and the valid defense and good cause requirement in Practice Book § 17-43 and . . . § 52-212 (a), if the judgment was rendered without jurisdiction of the parties or of the subject matter." (Internal quotation marks omitted.) Id., 181.

In the present case, by contrast, the heirs neither filed a motion to dismiss to challenge the court's jurisdiction nor sought dismissal of the action in their motion to open. See Practice Book § 10-30 (b) ("[a] defendant, wishing to contest the court's jurisdiction, shall do so by filing a motion to dismiss within thirty days of the filing of an appearance"). In addition, unlike the defendant in *Weinstein & Wisser, P.C.* v. *Cornelius*, supra, 151 Conn. App. 174, who filed an affidavit in support of his motion to dismiss disputing his usual

place of abode at the time of service; see id., 182–83; the heirs provided no sworn statements in support of their motion to open. For these reasons, *Weinstein & Wisser, P.C.*, is inapposite, and it does not restrict the application of § 52-212 in the present case.

Turning to the merits of the motion to open, we conclude that the heirs failed to assert that a good defense existed at the time that judgment was rendered. Although the heirs argue on appeal that "they should not have been served via publication" because "their identities and addresses were easily obtainable from public record[s]," that allegation is absent from their motion to open. Also absent from their motion to open is any allegation that notice had not been sent to Andrew's usual place of abode. Instead, the heirs stated that they "did not receive notice of the institution of this action until two days ago, on November 6, 2023," and that Andrew "died in the state of Maryland in 2021, on information and belief prior to the institution of this action." Neither of these statements constitute a good defense to the court's jurisdiction. Thus, the court reasonably could have concluded that the motion to open failed to satisfy the first prong under § 52-212 (a) and properly denied it on that basis. The court also could have denied the motion to open due to the heirs' failure to comply with the mandate in § 52-212 (c) that the motion to open "be verified by the oath of the complainant or [their] attorney . . . ." See, e.g., *Commissioner of Labor* v. *Walnut Tire Shop, LLC*, 201 Conn. App. 492, 496, 242 A.3d 1079 (2020) ("The motion to open . . . was not verified under oath by either the defendants or their attorney. On that basis alone, the trial court was entitled to deny the defendants' motion."). Consequently, because the court reasonably could have concluded that the motion to open failed to comply with § 52-212 due to either of these deficiencies, the court

did not abuse its discretion by denying it without a hearing.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

———————————————

[10] We note that the court's judgment ordering a foreclosure by sale does not extinguish the heirs' claimed right of redemption, and thus the heirs still may exercise their claimed right to redeem as the sole living heirs of the decedent despite the denial of their motion to open that judgment. "Only after a sale has been confirmed and ratified by the court does it become complete. . . . [T]he court's approval of a sale extinguishes the rights of redemption of other parties [but] . . . does not automatically vest title with the purchaser. . . . Instead, as set forth in General Statutes § 49-26, after a sale has been ratified or confirmed by the court, a conveyance of the property sold shall be executed by the person appointed to make the sale, which conveyance shall vest in the purchaser the same estate that would have vested in the mortgagee or lienholder if the mortgage or lien had been foreclosed by strict foreclosure . . . ." (Citations omitted; internal quotation marks omitted.) *Quicken Loans*, *Inc.* v. *Rodriguez*, 227 Conn. App. 806, 819–20, 324 A.3d 167 (2024), cert. denied, 351 Conn. 905, 330 A.3d 133 (2025).